[Crim. No. 20227. Aug. 31, 1979.]

In re WILLIAM BRANDT on Habeas Corpus.

**COUNSEL**

Michael R. Snedeker and Paul W. Comiskey for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Clifford K. Thompson and John T. Murphy, Deputy Attorneys General, for Respondent.

**OPINION**

NEWMAN, J.—■ May the Department of Corrections (CDC) prohibit correspondence between inmates and a paroled Prisoners Union official? "No" is the answer because of Penal Code section 2600, which reads: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

At issue here is a departmental rule providing that "[a] person's former inmate status will not in itself preclude approval to correspond with an

inmate except as follows: Prior approval of the warden or superintendent is required if the person was discharged from a correctional facility within the past 12 months. Prior approval of the warden or superintendent and of the person's case supervisor is required if the person is currently under parole, probation or outpatient supervision." (Cal. Admin. Code, tit. 15, § 3133, subd. (o).)

Petitioner while confined at Soledad was an active member of the Prisoners Union (Union). As a Union official he sought to correspond with inmates after his release on parole in 1977. He obtained the approval of his case supervisor and on April 15, 1977, sought the Soledad superintendent's approval. When the superintendent did not reply petitioner appealed to respondent Director of Corrections and received a refusal letter from him dated July 14, 1977. The letter ruled that petitioner might "correspond with an individual prisoner or prisoners as a private citizen," assuming approval pursuant to CDC rules, but would not receive "blanket approval" to correspond as a Union official.

Petitioner states he was at Soledad for four years. He claims to have been an exemplary prisoner, spending his last three years in the honor wing. He apparently was a cofounder of the Inmate Committee for Higher Education, an officer in the Gavel and Bridge Clubs, and a participant in the Jaycees' Blind Project. He was also a Union activist, one of 30 or so inmates involved in the request to establish a Union chapter at Soledad.

After release on parole he was hired by the Union to do investigative and public relations work on prison conditions around the country and to maintain communication with Union members at Soledad, as well as with other Soledad inmates who wrote to the Union. Respondent's action prevented him from carrying out some of those responsibilities.

CDC already permits inmates to become Union members to subscribe to the Union newspaper, to visit individually with Union attorneys and nonimprisoned Union members, and to correspond with nonimprisoned Union representatives who are not parolees. In the companion case *In re Reynolds* (1979) *ante,* page 131 [157 Cal.Rptr. 892, 599 P.2d 86], we order CDC to permit the wearing of Union buttons by inmates.

At issue here is whether inmate members and nonmembers who are interested may communicate in writing and thus be informed as to Union activities outside the prison. Union correspondence clearly is an impor-

tant incident to the inmates' association rights. Under Penal Code section 2600 inmates' rights can be abrogated only upon a showing of necessity for reasonable institutional security and reasonable public protection.[1] The main argument that respondent offers against this Union activity, as distinct from permitted Union activities, concerns the parolee status of the Union official corresponding from the outside. Respondent believes that inmate correspondence with parolees, unlike their other correspondence with outsiders, must be subject to prior approval as a protection against three types of dangers. The first is parolees' continuation of prison alliances, compromises, and antagonisms—not always beneficial to parolees. The second is extension of prison gangs to the outside—harmful to parolees and the public. The third is the likelihood of parolees' passing contraband or illicit information in their letters.

It does not appear to us, nor does respondent suggest, that those dangers arise in Union business which respondent tolerates in several other forms. Indeed respondent does not even attempt to relate those reasons for the general rule to the particular correspondence at issue here. Instead he would justify the rule's application to correspondence with this Union official on the ground that, while in Soledad, petitioner was one of the most active Union organizers. "[A]n intense, highly visible, controversial campaign to gain new members at CTF" is referred to. Further: "During this campaign feelings at CTF ran high, each side believing that nothing less than maintenance of an effective, secure and humane institution was at stake. There was considerable tension and oversensitivity. Mr. Brandt's activities aggravated the situation at CTF and made it more difficult to abate the problem."

In sum, respondent's opposition to this parolee-inmate correspondence seems almost entirely based on his opposition to the Union, though he sees his and the Union's aims as essentially the same ("maintenance of an effective, secure and humane institution"). He regards authorization of the correspondence as giving "tacit approval for the carrying on of such business by that organization." While personally he may not wish to permit Union activity, by no means has he shown that the ban here is necessary for reasonable institutional security or reasonable public protection. (Pen. Code, § 2600.) He therefore may not prohibit inmate-

---

[1]Though the applicability of Penal Code section 2600 to a parolee may not be clear (as he is not confined in a prison), the ban on his correspondence must meet the test of section 2600 because inmates' rights are at stake. "We do not deal here with difficult questions of the so-called 'right to hear' and third-party standing but with a particular means of communication in which the interests of both parties are inextricably meshed." (*Procunier* v. *Martinez* (1974) 416 U.S. 396, 409 [40 L.Ed.2d 224, 238, 94 S.Ct. 1800].)

parolee correspondence solely on the ground that it constitutes Union business.

Respondent has informed this court, in our campanion *Reynolds* case, that correspondence with nonimprisoned Union officials and members already occurs, apparently without prior approval, whenever the outsider is not a parolee. He has failed to make any showing that prior approval, much less a ban, should be necessary when the official union correspondence does involve a parolee. ▪ Like other correspondence, letters to and from a paroled Union official would be subject to surveillance and inspection. (Cal. Admin. Code, tit. 15, § 3133, subds. (a)-(c).) They could be stopped if violations of rules occur. (Cal. Admin. Code, tit. 15, §§ 3132; 3133, subds. (j), (k), (m); 3139; 3140.) Custodial supervision of parolee Union correspondence might reasonably be facilitated by a requirement that the sender use Union stationery, say, or otherwise specially identify his letters. As for correspondence in his personal capacity, petitioner does not challenge the prior-approval requirement; and we express no opinion on the rule's application in that context. (Respondent has intimated that he would take a more permissive attitude toward "a mere personal correspondence" request.)

Respondent is directed to cease enforcing the ban on official Union correspondence between inmates and parolees to the extent the ban is inconsistent with views expressed herein. Since petitioner already has been discharged from custody, however, the order to show cause is discharged; and the petition for writ of habeas corpus is denied.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**CLARK, J.,** Dissenting.—In *Jones* v. *North Carolina Prisoners' Union* (1977) 433 U.S. 119 [53 L.Ed.2d 629, 97 S.Ct. 2532], the United States Supreme Court upheld prison rules prohibiting prisoners from soliciting other inmates to join the Prisoners' Union and barring union meetings and bulk mailings concerning the union from outside sources. Explaining its decision, the high court observed: "The interest in preserving order and authority in the prisons is self-evident. Prison life, and relations between the inmates themselves and between the inmates and prison officials or staff, contain the everpresent potential for violent confrontation and conflagration. *Wolff* v. *McDonnell,* 418 U.S., at 561-562. Responsible prison officials must be permitted to take reasonable steps to

forestall such a threat, and they must be permitted to act before the time when they can compile a dossier on the eve of a riot. The case of a prisoners' union, where the focus is on the presentation of grievances to, and encouragement of adversary relations with, institution officials surely would rank high on anyone's list of potential trouble spots. If the [prison officials'] views as to the possible detrimental effects of the organizational activities of the Union are reasonable, as we conclude they are, then the regulations are drafted no more broadly than they need be to meet the perceived threat—which stems directly from group meetings and group organizational activities of the Union." (433 U.S. at pp. 132-133, fn. omitted [53 L.Ed.2d at p. 643].)

For the reasons stated by the high court, I conclude that the ban on official Prisoners Union correspondence between inmates and parolees is "necessary in order to provide for the reasonable security of the institution . . . and for the reasonable protection of the public." (Pen. Code, § 2600.)