[Crim. No. 20263. Aug. 31, 1979.]

In re STEPHEN D. REYNOLDS on Habeas Corpus.

**COUNSEL**

Michael R. Snedeker, Paul W. Comiskey and Smith, Snedeker & Comiskey for Petitioner.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, W. Eric Collins and Alvin J. Knudson, Deputy Attorneys General, for Respondent.

Rufus Edmisten, Attorney General (North Carolina), Jacob L. Safron, Deputy Attorney General, Frank J. Kelley, Attorney General (Michigan), William J. Mullaney, Assistant Attorney General, Wayne L. Kidwell, Attorney General (Idaho), Lynn E. Thomas, Deputy Attorney General, Mark Thompson, Ronald Y. Amemiya, Attorney General (Hawaii), Michael A. Lilly, Deputy Attorney General, Mike Greely, Attorney General (Montana), Mike McCarter, Assistant Attorney General, Slade Gorton, Attorney General (Washington), William C. Collins, Assistant Attorney General, Marshall Coleman, Attorney General (Virginia), Burnett Miller III, Assistant Attorney General, Robert L. Shevin, Attorney General (Florida), John Ashcroft, Attorney General (Missouri), Neil MacFarlane, Assistant Attorney General, James C. Martin, Daniel R. McLeod, Attorney General (South Carolina), Robert B. Hansen, Attorney General (Utah), Michael L. Deamer, Deputy Attorney General, Richard C. Turner, Attorney General (Iowa), Gary L. Hayward, Assistant Attorney General, Robert A. Ellison, Assistant Attorney General (Virgin Islands), Curt T. Schneider, Attorney General (Kansas), Roger N. Walter, Assistant Attorney General, Toney Anaya, Attorney General (New Mexico), Ralph W. Muxlow II, Assistant Attorney General, Lee Carl Bromberg, Special Assistant Attorney General (Massachusetts), John L. Hill, Attorney General (Texas), Richel Rivers, Assistant Attorney General, Robert E. DeLong, William J. Brown, Attorney General (Ohio), Richard Farrin, Assistant Attorney General, Julius C. Michaelson, Attorney General (Rhode Island), William Brody, Assistant Attorney

General, Richard R. Wier, Jr., Attorney General (Delaware), and John A. Parkins, Jr., Assistant Attorney General, as Amici Curiae on behalf of Respondent.

## OPINION

NEWMAN, J.— ▮ May California prison officials deny an inmate permission to acquire and wear a Prisoners Union lapel button? In this case the answer is no. The denial here violated Penal Code section 2600, which reads: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public."

At all levels of review the officials here have cited a Soledad Prison rule providing that "[m]embers of authorized groups will be authorized to have and wear a small lapel-type pin representing the organization. . . . No other pins or badges of any sort will be permitted. This does not include small religious symbols, which may be approved." The Prisoners Union (Union) is not an "authorized" group, and thus its button is banned.

Nowhere has the respondent Director of Corrections explained what danger he foresees to the security of the institution or protection of the public if Union buttons are displayed. He suggests that accepting his nonauthorization of the Union "would include a necessarily implied finding of the potential for incitement of disruption in the display of the button." Yet nothing in his overall arguments against Union activity refers to displaying the group's insignia.

Respondent has stated that he is concerned with concerted or collective action, as opposed to individual activities that relate to the Union. Thus, though the Department of Corrections proscribes Union meetings, it does permit inmates to become Union members, to subscribe to the Union newspaper,[1] and to visit individually with Union attorneys and nonimpris-

---

[1] The Prisoners Union newspaper, Outlaw, originally was banned on the ground that it would incite to violence. It was then permitted into Folsom Prison after a superior court order and now, apparently, is admitted to all California prisons. (See Pen. Code, § 2601, subd. (c).)

oned Union members. The unsupported implication seems to be that acquiring and wearing the button—unlike being a member, receiving the newspaper, and visiting with Union associates—in some way constitutes concerted or collective action.

Respondent also contends that, within the meaning of Penal Code section 2600, no constitutional or other right is involved. He distinguishes the Union button from the buttons and armbands that were protected in *Tinker* v. *Des Moines School Dist.* (1969) 393 U.S. 503 [21 L.Ed.2d 731, 89 S.Ct. 733] and *Burnside* v. *Byars* (5th Cir. 1966) 363 F.2d 744, saying that this button is not akin to speech and communicates no "idea of vital public concern" but "simply recites a group affiliation . . . ."

Petitioner argues that wearing the button would indeed express an idea because of the Union's history, goals, and reputation in prisons. It is "an economical means of expressing an attitude of pride, an analysis of what is both important and possible to change about life in prison, and a set of values about how to proceed." He notes that *Burnside* v. *Byars, supra,* 363 F.2d 744 involved the organizational button of the Student Nonviolent Coordinating Committee, as did *Blackwell* v. *Issaquena County Board of Education* (5th Cir. 1966) 363 F.2d 749. In those two cases the court considered wearing the button to be part of a student's right to free speech, as did the United States Supreme Court as to armbands in *Tinker* v. *Des Moines School Dist., supra,* 393 U.S. 503.

Respondent replies that *Blackwell* does not treat lapel buttons as First Amendment expression when their wearing has a potential for incitement of disruption. The record there apparently showed that an unusual amount of commotion and coercion had resulted from displaying the buttons. The court therefore permitted reasonable regulation of the students' right but by no means concluded they had no right. In *Burnside,* absent a record of disruption, the same court struck down as a violation of the First Amendment a prohibition against students' wearing the button.

Respondent has alleged neither past disruption caused by acquiring and wearing Union buttons nor specific reasons for predicting disruption. He relies solely on the fact that for security reasons he has refused to authorize the Prisoners Union as an inmate group. Yet he does not show that the reasons for not authorizing the Union (whether or not supportable and sufficient) apply to display of the button. Nor is any other justification offered for the button ban. Therefore the ban violates Penal Code section 2600, which as we have seen permits restrictions on rights

only "as is necessary in order to provide for the reasonable security of the institution . . . and for the reasonable protection of the public."

In future cases it may be possible in some situations for prison officials to prove reasonable security reasons for banning certain buttons, but the Soledad rule on "pins or badges of any sort" unlawfully restricts the prisoners' right to liberty of speech.

Respondent is directed to cease enforcing its ban and its parallel rules to the extent they may be inconsistent with views expressed herein. Since petitioner is not entitled to his release, however, the order to show cause is discharged, and the petition for writ of habeas corpus is denied.

Bird, C. J., Tobriner, J., Mosk, J., Richardson, J., and Manuel, J., concurred.

**CLARK, J.**—For the reasons stated in my dissenting opinion in *In re Brandt* (1979) *post*, page 136, at page 140 [157 Cal.Rptr. 894, 599 P.2d 89], I dissent from ordering respondent "to cease enforcing its ban and its parallel rules to the extent they may be inconsistent with views expressed" in the majority opinion. (*Ante*, p. 135.)