[Crim. No. 11857. Third Dist. June 24, 1982.]

In re CHARLENE ADELL GALLEGO on Habeas Corpus.

**COUNSEL**

Joseph Murphy for Petitioner.

L. B. Elam, County Counsel, and Thomas A. Darling, Deputy County Counsel, for Respondent.

**OPINION**

**SPARKS, J.**—Charlene Adell Gallego, a person in the custody of the Sheriff of Sacramento County awaiting a criminal trial, seeks by petition for writ of habeas corpus to obtain an order from this court directing the sheriff to permit her to touch and hold her infant son. Petitioner first sought a so-called "contact visit" in the Superior Court of Sacramento County. After an evidentiary hearing, that court denied relief. Petitioner then filed her petition for writ of habeas corpus in this court and we denied the petition without opinion. She sought a hearing in the California Supreme Court, and that court issued an order to show cause returnable in this court.[1] We now consider the merits of pe-

---

[1]Actually, the Supreme Court granted the petition for hearing and transferred the matter to that court. It then issued an order to show cause returnable before this court, but failed to transfer the matter back to this court. Such a retransfer, however, may be implied from the procedure employed.

titioner's claims. ██ ██ We hold that under the circumstances of her confinement petitioner, as a pretrial detainee, does not have a constitutional, statutory or administrative right to a contact visit. We therefore deny the petition for a writ of habeas corpus.

## I

Petitioner is charged, along with her codefendant husband, with a variety of criminal acts including two counts of first degree murder with special circumstance allegations. (Pen. Code, §§ 187, 190.2.) Her requests to have bail set in the superior court, this court, and the Supreme Court have all been unsuccessful. The pretrial proceedings have been lengthy, with the result that petitioner has been held in custody in excess of one year.

After her arrest petitioner gave birth to a son. When the child was approximately one week old, petitioner was allowed a contact visit, but since that time her requests to touch and hold her son have been denied. The contact visit which did occur was in violation of sheriff's department policy, and the employee who permitted the contact did so without authorization.

At the hearing in the superior court, a transcript of which has been lodged in this court, it was established that it is the policy of the sheriff's department that no pretrial detainees, either male or female, are allowed contact visits. Sheriff Lowe testified that considerations behind the policy include the inadequacy of the jail facility to permit contact visits and the level of security that must be maintained.

Captain Wallace, the Commander of the Rio Consumnes Correctional Center where petitioner is being held, testified that pretrial detainees are considered to be maximum security prisoners and are not allowed contact visits for that reason. He did not believe that they could allow contact visits without jeopardizing the security of the jail. Among other things, such visits provide an opportunity for contraband to be smuggled into the jail.

Chief Deputy Baker, who is in charge of security and correctional services, testified that in his opinion it was not feasible to permit contact visits for pretrial detainees. He testified that, with the facilities and staff that are available, such visits cannot be safely permitted.

## II

The issue of the right of pretrial detainees to contact visitation has been extensively litigated in the federal courts. A review of those authorities is appropriate.

In *Rhem* v. *Malcolm* (2d Cir. 1974) 507 F.2d 333, the court of appeals reviewed a district judge's order declaring the Manhattan House of Detention for Men to be in violation of the federal Constitution. The district judge had held that subjecting pretrial detainees to restrictions and privations other than those which inhere in their confinement or that are justified by "compelling necessities" of jail administration is a violation of due process and equal protection. Among the practices the trial judge found improper was the denial of contact visits, which eliminated any chance "'to shake hands with a friend, to kiss a wife, or to fondle a child.'" The court of appeals adopted the approach of the district judge and affirmed. (507 F.2d at pp. 337-338.) In contrast, in *Oxendine* v. *Williams* (4th Cir. 1975) 509 F.2d 1405, at page 1407, the court of appeals dealt briefly with the question by stating: "Finally, Oxendine has no constitutional right to physical contact with his family."

Decisions in the courts of appeals subsequent to *Rhem* and *Oxendine* have been divided. Cases which have required contact visitation include *Marcera* v. *Chinlund* (2d Cir. 1979) 595 F.2d 1231, 1234; *Wolfish* v. *Levi* (2d Cir. 1978) 573 F.2d 118, 126, footnote 16 ("Pretrial detainees certainly have a first amendment [*sic*] to contact visits"); *Miller* v. *Carson* (5th Cir. 1977) 563 F.2d 741, 748, footnote 9 (holding that contact visits may be denied to some detainees based upon classification related to security, but may not be denied to all detainees); and *Rhem* v. *Malcolm* (2d Cir. 1975) 527 F.2d 1041, 1043 (Rhem II). To the contrary is *Feeley* v. *Sampson* (1st Cir. 1978) 570 F.2d 364, 373 (holding that unless the denial of contact visits can be found on the basis of evidence of record to be an exaggerated response to security needs the courts should not interfere in the running of jails). Finally, in *Campbell* v. *McGruder* (D.C.Cir. 1978) 580 F.2d 521, 547, the court held that jail officials have flexibility in classifying those detainees that may be permitted contact visits, but left open the question whether such visits may be precluded altogether.

The United States Supreme Court granted certiorari in *Wolfish* v. *Levi, supra,* under the name *Bell* v. *Wolfish.* (439 U.S. 816 [58 L.Ed.2d 107, 99 S.Ct. 76].) In *Bell* v. *Wolfish* (1979) 441 U.S. 520 [60

L.Ed.2d 447, 99 S.Ct. 1861], the Supreme Court rejected the Second Circuit Court of Appeals' "compelling-necessity" test. Where no express guarantee of the Constitution is alleged to be breached, what is at issue is the detainee's right to be free from punishment, and his desire to be comfortable. (441 U.S. at p. 534 [60 L.Ed.2d at p. 465].) The question whether a measure is punishment depends upon a number of factors, including whether it involves an affirmative disability or restraint, whether it has historically been considered punishment, whether it comes into play only following a finding of scienter, whether its operation will promote the aims of punishment, whether the behavior to which it applies is already a crime, whether an alternative purpose may be assigned to it to which it is rationally connected, and whether it appears excessive in relation to the purpose assigned. (441 U.S. at p. 538 [60 L.Ed.2d at pp. 467-468].) Absent a showing of an expressed intent to punish on the part of officials, the determination will generally turn on the question whether an alternative purpose may be assigned and whether the measure appears exessive in relation to the alternative purpose. (*Ibid.*) The Supreme Court cautioned lower courts that in applying this test deference should be given to the expertise of corrections officials and in the absence of substantial evidence that the officials have exaggerated their response to security requirements their judgment should stand. (441 U.S. at p. 540, fn. 23 [60 L.Ed.2d at p. 469, fn. 23].)

Although the Supreme Court in *Bell* rejected the court of appeals' "compelling-necessity" test and reversed most of the decision in *Wolfish* v. *Levi, supra*, the issue of contact visitation was not at issue in *Bell* and was expressly left undecided. (441 U.S. at p. 559, fn. 40 [60 L.Ed.2d at p. 482, fn. 40].) The courts of appeals have subsequently considered this issue in light of the decision in *Bell*.

In *Inmates of Allegheny Cty. Jail* v. *Pierce* (3d Cir. 1979) 612 F.2d 754, 760, the court held that a ban on contact visits was a reasonable choice by prison officials between alternative methods of protecting security interests. In *Jordan* v. *Wolke* (7th Cir. 1980) 615 F.2d 749, 753-754, the court similarly upheld a ban on contact visits, citing the decision in *Bell*. In *Jones* v. *Diamond* (5th Cir. 1981) 636 F.2d 1364, 1377, the court held that under the decision in *Bell*, contact visitation may be denied for legitimate security reasons applicable to all detainees or to particular individuals. What is necessary, however, is an evidentiary hearing to apply the *Bell* standard. Finally, in *Ramos* v. *Lamm* (10th Cir. 1980) 639 F.2d 559, at page 580, footnote 26, the court stat-

ed that the clear weight of present authority establishes that there is no constitutional right to contact visitation in a jail, and the court agreed with that view.

We agree with the court in *Ramos* v. *Lamm* that the clear weight of the federal authorities establish that there is no constitutional right to contact visits in a jail. The reasoning of the Supreme Court in *Bell* would seem to support that view, although the issue was not expressly decided there.[2]

We turn now to a consideration of state court decisions on the rights of the incarcerated. California's position has been one of deference, but not total abdication of responsibility, to prison and jail officials. In *In re Reynolds* (1979) 25 Cal.3d 131 [157 Cal.Rptr. 892, 599 P.2d 86], the Supreme Court considered the Director of Corrections' rule which permitted prisoners to wear a small lapel-type button proclaiming membership in an authorized group, but precluded prisoners from wearing a prisoners union lapel button because it was not an authorized group. The director alleged neither past disruption nor specific reasons for expecting disruption from the wearing of such buttons and offered no other explanation for the ban. The Supreme Court accordingly held that the ban violated Penal Code section 2600, which permitted only such restrictions on rights as would be necessary to provide for reasonable security and to protect the public. (25 Cal.3d at pp. 134-135.) In a companion case, *In re Brandt* (1979) 25 Cal.3d 136 [157 Cal.Rptr. 894, 599 P.2d 89], the court held the director's ban on correspondence between prisoners and nonimprisoned union officials and members to be invalid for the same reasons. (25 Cal.3d at p. 140.)

In *In re Price* (1979) 25 Cal.3d 448 [158 Cal.Rptr. 873, 600 P.2d 1330], the Supreme Court considered the Director of Corrections' refusal to permit the prisoners union to hold in-prison meetings and the refusal to approve the organization as an "inmate activity group." In that case the director set forth a number of security concerns in support of the ban, which included: a fear that in the absence of normal union economic tools, strikes and disruption would be the only available course of action for the group; recruitment activities would lead to threats and coercion; membership solicitation would lend itself to infil-

---

[2]The Supreme Court may yet decide this question, since it has granted certiorari in *Jones* v. *Diamond, supra*, under the name *Ledbetter* v. *Jones* (1981) 452 U.S. 959 [69 L.Ed.2d 970, 101 S.Ct. 3106].

tration by prison gangs with violent propensities; the particular prison involved had a history of violent disruption by inmates; and the ability of nonrelatives and nonattorneys to have regular contact with inmates would be a problem because they are not subject to monitoring. The Supreme Court held that by any objective appraisal these concerns were not inconsequential and that the ban on union meetings was not an unreasonable restriction. (25 Cal.3d at p. 454.) The court concluded: "We decide merely that as a court we cannot second-guess the present determination of the prison administration that prisoners union meetings pose a potential threat to the reasonable security of penal institutions." (*Id.*, at p. 455.)

In *In re Cummings* (1982) 30 Cal.3d 870 [180 Cal.Rptr. 826, 640 P.2d 1101], the high court reviewed a Department of Corrections regulation limiting overnight visitation with eligible inmates to persons related to the prisoner by blood, marriage, or adoption. Noting that "restrictions upon an inmate's associational rights are an inevitable product of his confinement," the court upheld the regulations as reasonable and consistent with legitimate state interests. (*Id.*, at p. 873.) It reasoned that "[i]f, as is clear, prison officials may ban overnight visits with inmates altogether, then certainly they may limit those visits to persons with whom the inmate has a bona fide relationship established through blood, marriage, or adoption." (*Ibid.*)

In *In re French* (1980) 106 Cal.App.3d 74 [164 Cal.Rptr. 800], officials at San Quentin state prison had a practice of terminating indefinitely the visitation privileges of any visitor that refused to consent to a fully unclothed body search. When the superior court ruled that the indefinite suspension of visitation rights was in violation of Penal Code section 2601, providing for visitation rights, the prison complied by requiring strip searches prior to each visit and by prohibiting contact visits. The Court of Appeal held that the absolute suspension of visitation was not a reasonable security measure based upon a one-time refusal to submit to a search. (106 Cal.App.3d at p. 84.) The court reasoned that strip searches, which were available and utilized, were an adequate security measure. (*Id.*, at pp. 82-84.) With respect to contact visits the court concluded that the strip search procedure rendered the ban on contact visitation unnecessary and thus in violation of the director's rules regarding visitation. (*Id.*, at pp. 85-86.) The prison could not simultaneously compel both strip searches and noncontact visitation. (*Ibid.*)

In *Department of Corrections* v. *Superior Court* (*Jordan*) (1982) 131 Cal.App.3d 245 [182 Cal.Rptr. 294], the department successfully sought a writ of mandate compelling the superior court to vacate its order reinstating "contact" visits between an inmate and his attorney. The Court of Appeals noted that "[t]he uncontroverted evidence of [the inmate's] history of violence and weapons possession in prison reflects a decade of incidents of attempted escape, assaults on staff and possession and use of weapons. Some of the weapons were prison made; others, apparently were smuggled in from the outside. The search procedures normally used by the prison authorities apparently were ineffectual." (*Id.*, at pp. 251-252.) Relying upon *Bell*, the court held that ". . . the restrictions placed upon [the inmate] were well within the permissible limits established by the United States Supreme Court. We are equally persuaded that the challenged restrictions neither violated nor unreasonably impinged [the inmate's] rights under the California Constitution in view of his demonstrated propensity towards violence and his status as a convicted prisoner subject to normal conditions of confinement." (*Id.*, at p. 254.)

These state cases considered the rights of convicted felons incarcerated in state prison. Two recent Court of Appeal decisions have considered the rights of pretrial detainees in county jails. In *In re Smith* (1980) 112 Cal.App.3d 956 [169 Cal.Rptr. 564], pretrial detainees sought a writ of mandate against the Sheriff of Ventura County to compel him to allow child visitation and the receipt of reading material from sources other than the publisher (a "publisher only" rule). The Court of Appeal applied the *Bell* standard to the publisher only rule and found that the rule was a reasonable and proper means of maintaining security at the jail. (112 Cal.App.3d at p. 966.) The court further rejected the argument that the publisher only rule denied pretrial detainees equal protection in that the rule did not apply to state prisons, because there was no showing that the county jail and state prisons were similarly situated. (*Id.*, at p. 967.)

The court then turned to the issue of child visitation. The case did not involve a contact visitation issue; rather it appeared that the jailers would permit adults to visit, but not children. The court noted that the relationship between parent and child is fundamental, and found no sufficient security reason for the ban on child visitation. The court held that under *Bell*, the ban was an excessive response to the limited risk presented by child visitation. (*Id.*, at p. 969.)

*In re Smith,* as we noted, involved a ban on child visitation and not a ban on contact visitation. Petitioner has been allowed visitation; it is contact visitation which she is seeking. It is obvious that significantly different security considerations would apply in a contact visitation setting than in a noncontact setting. The contact visitation issue came before the Court of Appeal in *Inmates of Sybil Brand Inst. for Women v. County of Los Angeles* (1982) 130 Cal.App.3d 89 [181 Cal.Rptr. 599]. In that case the court agreed with the *Smith* court that the *Bell* standard is applicable. (130 Cal.App.3d at p. 101.) The court held that under that standard the ban on contact visits was shown to be reasonable and justified. (*Id.,* at p. 109.)

*Inmates of Sybil Brand* involved a contention that was not present in most of the cases which have considered the contact visit issue. It appeared that in *Rutherford v. Pitchess* (C.D.Cal. 1978) 457 F.Supp. 104, a federal district court had ruled that male prisoners confined in the Los Angeles County central jail pending trial were entitled, under certain circumstances, to a limited number of contact visits. (*Id.,* at p. 110.) The superior court subsequently had ruled that a difference in treatment between male and female pretrial detainees was justified. The California Court of Appeal noted that the difference in treatment based upon sex required the application of an equal protection "strict scrutiny" standard of review, but held that under the evidence such a standard was met. (*Ibid.*)

It thus appears that the *Bell* standard has been adopted by California courts in considering issues relating to security measures in jails and prisons. (*In re Price, supra,* 25 Cal.3d at p. 455; *Inmates of Sybil Brand Inst. for Women v. County of Los Angeles, supra,* 130 Cal.App. 3d at pp. 100-101; *In re Smith, supra,* 112 Cal.App.3d at p. 966.) Succinctly stated, that standard provides that in the first instance decisions regarding security measures are entrusted to the authorities in charge of the detention facility. With regard to pretrial detainees, courts should defer to the expertise of the officials in charge of the facility unless it appears that the measure is expressly intended to be punitive or there is substantial evidence that the measure is an unreasonable or exaggerated response to security requirements.

There is no indication in the record that the ban on contact visitation for pretrial detainees in the Sacramento County jail is a punitive measure. Nor can it be concluded that it is an exaggerated response to security requirements. It appears that the present jail facilities do not

have areas where contact visitation could be permitted without jeopardizing security. Such visits would provide the opportunity for contraband to be smuggled into the jail. There is inadequate staff to provide the security measures which contact visitation would require. Moreover, contact visitation could not be provided to everyone, and as a result a great deal of pressure would be put upon the detainee who is permitted such visits to make that visit available for the smuggling of contraband. Finally, Chief Baker explained that in order to permit a contact visit in the main jail the child would have to be brought into the heart of the security area, probably in the booking area where the new arrestees are brought in from the street. Under such circumstances the visit would present not only internal security problems, but it could not be guaranteed that the child would not come to harm.

Petitioner's argument is not based upon a claim that all pretrial detainees are entitled to contact visitation. She argues only that under her peculiar circumstances such visitation should be permitted. She points out that she has been in custody for a lengthy period and that her pretrial detention may well continue for some time. She further points out that the contact visitation she desires is with her infant son and not with a spouse, relative, or friend. The superior court and the sheriff's department officials expressed sympathy for petitioner's desire to hold her son, but nevertheless felt that exceptions to the jail policy orders could not be made. This decision does not appear unreasonable. There are over 1,450 persons in custody in the Sacramento jails, and over 750 of those are pretrial detainees. These persons are supervised by a staff of over 400. For this reason the officials require that all security policy orders be carefully considered and documented in writing, and that all such orders be strictly adhered to by staff. Any deviation from written policy creates the opportunity for errors to occur and weakens security. Such evidence supports the decision not to make individual exceptions from policy. Moreover, the making of such exceptions would lead to claims of arbitrariness and unfairness from detainees who are not allowed contact visits.

We conclude that, on this record, this court cannot second-guess the Sacramento County Sheriff's Department and interfere with its operation of the jail facilities. Our conclusion, like that of the Supreme Court in its *In re Price* opinion, is not "carved in stone." The sheriff's department has entered into a consent decree in federal litigation which calls for improvement of the jail facilities. Construction is planned which may permit the development of rules for contact visitation for

some detainees. We hold only that we cannot at this time on this record interfere with the running of the jail.

## III

We finally consider petitioner's contention that administrative regulations contained in title 15 of the California Administrative Code require that she be permitted contact visitation. Penal Code section 5058 authorizes the Director of Corrections to prescribe and amend rules for the administration of California prisons. Pursuant to that authorization, the director has promulgated California Administrative Code, title 15, section 3170. With regard to visitation, subdivision (d) of that rule provides: "Devices which preclude physical contact between inmates and visitors will not be used except as is necessary in individual instances where substantial reasons exist to believe that physical contact with a visitor, visitors or with other inmates will seriously endanger the safety of persons or the security of the institution, or as a temporary measure as punishment for willful failure or refusal to abide by regulations related to visiting."

The cited rule was promulgated in implementing the Director of Corrections' duties in the management of the state prison system. It does not apply to local facilities. (See Cal. Admin. Code, tit. 15, §§ 3000, subd. (11), 3001, 3170.) Accordingly it does not directly apply to petitioner. With regard to any implied equal protection argument we must hold, as the Court of Appeal held in *In re Smith, supra*, 112 Cal.App. 3d at page 967, that there has been no showing that the county jail and state prisons are similarly situated.

Penal Code section 6030 requires the Board of Corrections to establish the minimum standards for local detention facilities. Pursuant to that provision the board has promulgated California Administrative Code, title 15, section 1062. That section provides: "The facility administrator or the facility manager shall develop and implement an inmate visiting plan. Such a plan shall provide for as many visits and visitors as facility schedules, space, and number of personnel will allow. For sentenced prisoners in Type I facilities and all prisoners in Type II facilities there shall be allowed no fewer than two visits totaling at least one hour per inmate each week. In Type III and Type IV facilities there shall be allowed one or more visits, totaling at least one hour, per week. [¶] Contact visits shall be allowed at least to minimum security prison-

ers housed in Type III and Type IV facilities and in Type II facilities which are designed and constructed for contact visits."

Petitioner argues that this administrative regulation requires that she be permitted contact visits. We must disagree. Types I, II, III, and IV facilities are defined in California Administrative Code, title 15, section 1006. Subdivision (4) of that section provides that a type II facility is "a local detention facility used for the detention of persons pending arraignment, after arraignment and during trial, and upon a sentence of commitment. Detention in such facilities may be indefinite during trial and up to one year upon commitment." Petitioner is clearly confined in a type II facility. A type III facility is a facility which is only used for convicted and sentenced persons, and a type IV facility is used for inmates eligible for work or education furlough and other programs involving inmate access to the community. (Cal. Admin. Code, tit. 15, § 1006, subds. (5), (6).) A type I facility is used only for short term pretrial detention, under 48 hours excluding holidays and weekends after booking. (*Id.*, at subd. (3).) Contact visits are required at type II facilities only when the facility is designed and constructed for contact visitation. (Cal. Admin. Code, tit. 15, § 1062.) The evidence in the superior court established that the Rio Consumnes Correctional Center where petitioner is being held was not so designed or constructed and thus it does not appear that contact visitation is required by the regulations of the Board of Corrections concerning local facilities.

The petition for a writ of habeas corpus is denied. The order to show cause previously issued is discharged.

Puglia, P. J., and Carr, J., concurred.

A petition for a rehearing was denied July 20, 1982.