[No. A040219. First Dist., Div. One. Mar. 22, 1989.]

In re RON GRIMES on Habeas Corpus.

**COUNSEL**

Robert D. Curiel, County Counsel, and William J. Losh, Jr., Deputy County Counsel, for Appellant.

Richard Jay Moller for Respondent.

**OPINION**

**NEWSOM, J.**—Respondent, together with other inmates at the Humboldt County Jail, filed a petition for writ of habeas corpus, claiming that appellant violated his constitutional rights by replacing direct dial pay telephones

in the jail with collect-only telephones.[1] The essence of respondent's complaint is that the public defender's office and some private attorneys and other county offices refused to accept collect calls from jail inmates, thereby compromising his access to counsel and the courts.

After several hearings were conducted at which evidence was taken, including petitions, returns, denials, and argument of counsel, the trial court ordered appellant to install and maintain a special telephone line directly connecting the Humboldt County Jail and the Humboldt County Public Defender's office for use by respondent and fellow inmates at the jail without cost. The facts pertinent to this appeal are as follows.

The Humboldt County Jail (hereafter the jail) formerly employed a coin-operated pay telephone system for use by the inmates. The jail administration and the telephone company, however, perceived abuses with this system. Pacific Bell objected to the costs associated with coin-operated telephones, which were expensive to manufacture and supply, required that a coin collector periodically visit the jail to empty the coin boxes, and resulted in lost revenue due to fraudulent and uncollected charges. The administration of the jail cited several disadvantages to the pay phone system: the use and circulation of coins in the jail presented disciplinary problems; the telephone coin boxes were a potential target of criminal activity; a correctional officer was required to accompany the coin-box collector, which infringed upon regular staff duties; the pay telephones were occasionally used by inmates to harass or threaten crime victims or witnesses; and, inmates sometimes received illicit calls from outside the jail.

Pacific Bell proposed installation of collect-only telephones in the jail, a less expensive system designed to eliminate many of the abuses of the coin operated telephones by allowing only collect calls by the inmates. By the time respondent filed his petition, nearly all of the coin operated telephones had been replaced by collect-only telephones.

Soon after the collect-only telephone system was implemented, the inmates discovered that the public defender's office, other county departments, and a few private attorneys typically do not accept collect calls. In Humboldt County, the public defender's office represents approximately 80 percent of the inmates at the jail. The jail population fluctuates, but averages nearly 200 inmates.

The cost of a local collect call to the public defender's office from the jail is $1.19 for the first three minutes. Testimony was received that the public

---

[1] The similar petitions of other inmates were dismissed as moot at various points in the proceedings, and the case went forward to judgment on respondent's petition alone, although evidence in the other inmates' cases has been included in the transcripts before us.

defender's office would receive "[a]nywhere from ten to twenty calls a day" from its client inmates at the jail at a cost of $20 to $30 a day, if it accepted collect calls. Such an expense would be quite burdensome for the budget of the public defender's office.

In contrast, the cost of Pacific Bell's Centrex telephone system costs $120 to purchase, $40 to install, and $23 per month as a service charge for the single line from the jail to the public defender's officer.

Attorneys from the public defender's office are permitted to visit their clients in the jail from 8:30 a.m. to 10:30 a.m., and from 12:30 p.m. to 2:30 p.m. These are "prime time court hours," so, according to the evidence, the combination of inconvenient visiting hours and lack of telephone access under the collect-only system has been "obviously detrimental to [the office's] ability to adequately represent clients."

Appellant argued at the hearing, but did not prove, that a free access line to the public defender's office would require use of correctional officers to escort inmates to the telephone, creating an "unconscionable burden" on the jail staff.

█ Appellant argues that the trial court erred by requiring installation and maintenance of a toll-free line from the jail to the public defender's office for use by inmates. It is appellant's position that the collect-only telephone system provides jail inmates with "reasonable access" to telephone communication as required by law. Any denial, claims appellant, of inmates' rights to consult with their attorneys is attributable to the public defender's refusal to accept collect calls and not to the jail's telephone system.

Reliance is placed by appellant on the rule that in monitoring prison operations and reforms the courts must exercise restraint and defer to the prison administrators " 'in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order . . . and to maintain institutional security.' " (*Block* v. *Rutherford* (1984) 468 U.S. 576, 585 [82 L.Ed.2d 438, 446, 104 S.Ct. 3227]; *Bell* v. *Wolfish* (1979) 441 U.S. 520, 547-548 [60 L.Ed.2d 447, 474, 99 S.Ct. 1861]; *Bradshaw* v. *Duffy* (1980) 104 Cal.App.3d 475, 483 [163 Cal.Rptr. 559]. "Courts are properly reluctant to interfere with prison administration, given the manifold factual difficulties inherent in that task." (*Ibid.*) " 'The function of a court is limited to determining whether a constitutional violation has occurred, and to fashioning a remedy that does no more and no less than correct that particular constitutional violation. . . .' " (*Wilson* v. *Superior Court* (1987) 194 Cal.App.3d 1259, 1269 [240 Cal.Rptr. 131].)

"But the deference to which prison administrators are ordinarily entitled has never been construed as requiring judicial abstention . . . ." (*In re Parker* (1984) 151 Cal.App.3d 583, 590 [198 Cal.Rptr. 796]; see also *In re Gallego* (1982) 133 Cal.App.3d 75, 81 [183 Cal.Rptr. 715].) "[P]rison administrators are in the best position to control inmates but this control cannot violate statutory or constitutional rights." (*In re Jordan* (1972) 7 Cal.3d 930, 934 [103 Cal.Rptr. 849, 500 P.2d 873]; *In re Parker, supra,* 151 Cal.App.3d at p. 589.) ▮ Thus, the courts' traditional deference to administrative expertise in prison matters does not foreclose judicial intervention to remedy statutory or constitutional violations. (*In re Jordan, supra,* 7 Cal.3d at p. 934; *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles* (1982) 130 Cal.App.3d 89, 101 [181 Cal.Rptr. 599].)

The United States Supreme Court has declared that "prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison." (*Bell* v. *Wolfish, supra,* 441 U.S. 520, 545 [60 L.Ed.2d 447, 472]; see also *Jones* v. *North Carolina Prisoners' Union* (1977) 433 U.S. 119, 129 [53 L.Ed.2d 629, 640-641, 97 S.Ct. 2532].) "Lawful imprisonment necessarily makes unavailable many rights and privileges of the ordinary citizen, a 'retraction justified by the considerations underlying our penal system.' *Price* v. *Johnston,* 334 U.S. 266, 285 (1948). ▮ But though his rights may be diminished by the needs and exigencies of the institutional environment, a prisoner is not wholly stripped of constitutional protections when he is imprisoned for crime." (*Wolff* v. *McDonnell* (1974) 418 U.S. 539, 555 [41 L.Ed.2d 935, 950, 94 S.Ct. 2963].) Thus, there must be " 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.' " (*Bell* v. *Wolfish, supra,* 441 U.S. at p. 546 [60 L.Ed.2d at p. 473]; *Wolff* v. *McDonnell, supra,* 418 U.S. 539, 556 [41 L.Ed.2d 935, 950-951].)

California law essentially parallels the federal, but adds specific statutory protections to prisoners' constitutional rights. "We have, in this state, 'long since abandoned the medieval concept of strict "civil death" and have replaced it with statutory provisions seeking to insure that the civil rights of those convicted of crime be limited only in accordance with legitimate penal objectives.' " (*In re Van Geldern* (1971) 5 Cal.3d 832, 836 [97 Cal.Rptr. 698, 489 P.2d 578]; see also *In re Harrell* (1970) 2 Cal.3d 675, 702 [87 Cal.Rptr. 504, 470 P.2d 640], cert. den.). While prisoners, as a necessary corollary of prison life, forfeit certain rights and privileges enjoyed by the general populace, they retain " 'those basic rights which are not incompatible with the running of the penal institution.' " (*Payne* v. *Superior Court* (1976) 17 Cal.3d 908, 913 [132 Cal.Rptr. 405, 553 P.2d 565].) Deprivation of a prisoner's rights or privileges requires penological objections. (*People* v. *Estrada* (1979) 93 Cal.App.3d 76, 99 [155 Cal.Rptr. 731].)

The Penal Code[2] provides statutory affirmation for those constitutional rights retained by prisoners. Section 2600 declares that prisons may deny prisoners only certain civil rights; it provides: "A person sentenced to imprisonment in a state prison may, during any such period of confinement, be deprived of such rights, and only such rights, as is necessary in order to provide for the reasonable security of the institution in which he is confined and for the reasonable protection of the public." Under subdivision 2 of section 2600, prisoners are specifically granted the right to " 'correspond, confidentially, with any member of the State Bar, or holder of public office . . . .' " ▮ ▮ ▮ ▮ (*In re Jordan, supra,* 7 Cal.3d 930, 935.)[3] ▮ Although on its face section 2600 applies only to those confined in state prisons, our high court has declared that equal protection principles require its application to be extended to all persons who are " 'similarly situated with respect to the legitimate purpose of the law,' " such as county jail inmates. (*De Lancie* v. *Superior Court* (1982) 31 Cal.3d 865, 872 [183 Cal.Rptr. 866, 647 P.2d 142]; see also *Inmates of the Riverside County Jail* v. *Clark, supra,* 144 Cal.App.3d 850, 860.)

▮ "Under Penal Code section 2600 inmates' rights can be abrogated only upon a showing of necessity for reasonable institutional security and reasonable public protection." (*In re Brandt* (1979) 25 Cal.3d 136, 139 [157 Cal.Rptr. 894, 599 P.2d 89], fn. deleted.) As noted in *In re Harrell, supra,* 2 Cal.3d 675, 698: "Section 2600 cannot be construed as a straightjacket limiting the ability of prison authorities to deal with institutional realities. Rather it is to be viewed as a prison 'bill of rights' setting forth certain fundamental guarantees which are to be protected against arbitrary infringement."

Review requires a three-step inquiry: "(1) Are any 'rights' implicated? (2) If they are, does a 'reasonable security' problem exist which might permit a deprivation of rights under the statute? (3) If so, to what extent are deprivations of those rights 'necessary' to satisfy reasonable security interests." (*In re Arias* (1986) 42 Cal.3d 667, 689-690 [230 Cal.Rptr. 505, 725 P.2d 664], fn. deleted.)[4] Essentially, a balancing test is employed. Where a restriction is

---

[2] All further statutory references are to the Penal Code unless otherwise indicated.

[3] Section 1063 of title 15 of the California Code of Regulations similarly provides that inmates must be permitted to "correspond, confidentially, with state and federal courts, any member of the State Bar or holder of public office, and the State Board of Corrections . . . ." The standards set forth in title 15 " 'constitute contemporary notions of decency and are advisory in nature,' " but the courts do not rely blindly on these standards as fixing constitutional minima. (*Inmates of the Riverside County Jail* v. *Clark* (1983) 144 Cal.App.3d 850, 860 [192 Cal.Rptr. 823].)

[4] In *Arias,* the court observed that "[t]he federal prisoner's rights cases utilize a different balancing formula than that required under section 2600. The federal equation does not require prison security measures to be as closely tailored to security objectives as does section

imposed upon an inmate's civil rights protected by Penal Code section 2600, "'the availability of another less restrictive alternative to accomplish the goal of reasonable security weighs against the restriction.'" (*In re Parker, supra,* 151 Cal.App.3d 583, 589; quoting from *In re Stone* (1982) 130 Cal.App.3d 922, 927 [182 Cal.Rptr. 79].)

 Inmates are guaranteed the right to adequate, effective and meaningful access to the courts under the Fourteenth Amendment. (*Bounds* v. *Smith* (1977) 430 U.S. 817, 820 [52 L.Ed.2d 72, 78, 97 S.Ct. 1491]; *Morris* v. *Superior Court* (1983) 145 Cal.App.3d 561, 566 [193 Cal.Rptr. 496].) The right of access to counsel is an essential component of the right of access to the courts. (*Bounds* v. *Smith, supra,* 430 U.S. at pp. 822-823 [52 L.Ed.2d at p. 79]; *Johnson by Johnson* v. *Brelje* (7th Cir. 1983) 701 F.2d 1201, 1207.) In *Procunier* v. *Martinez* (1974) 416 U.S. 396, 419 [40 L.Ed.2d 224, 243, 94 S.Ct. 1800], the United States Supreme Court declared that this right of access requires that inmates be given a "reasonable opportunity to seek and receive the assistance of attorneys," and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." (See also *Wooden* v. *Norris* (M.D.Tenn. 1986) 637 F.Supp. 543, 553; see also *Owens-El* v. *Robinson* (W.D.Pa. 1978) 442 F.Supp. 1368, 1386.) This right is possessed not only by convicted prisoners, but by pretrial detainees who are jailed pending trial. (*United States* ex rel. *George* v. *Lane* (7th Cir. 1983) 718 F.2d 226, 230; *Lock* v. *Jenkins* (7th Cir. 1981) 641 F.2d 488, 498.)[5] In evaluating the collect-only telephone system implemented by appellant, we must weigh the overall ability of respondent and similarly situated inmates to communicate with counsel with the justification offered by appellant by utilizing this particular telephone system. (*Wooden* v. *Norris, supra,* 637 F.Supp. 543, 553-554.) Our evaluation must proceed from the premise that telephone communication is essential for inmate contact with attorneys. (*Johnson* v. *Galli* (D.Nev. 1984) 596 F.Supp. 135, 138.) Personal visits with attorneys are permitted, but only during relatively inconvenient hours. Mail service remains available as a means of communication, but is often ineffective, particularly where an inmate requires immediate contact

---

2600." (*Id.* at p. 690.) The court explained that the "'rational response'" standard employed by some of the federal courts "permits infringements of liberty whenever they are rationally related to security concerns, and does not require prison officials to search for the least drastic means of addressing those concerns. [¶] In contrast, section 2600 permits only such security measures as are 'necessary.' By definition, the 'necessary' standard requires that a security measure be the least intrusive possible of inmates' rights yet flexible enough to satisfy the security need." (*Id.* at p. 691.)

[5] The California Code of Regulations, in title 15, specifically provides, in sections 1067 and 1060, respectively, that prison administrators "implement a plan which allows reasonable access to a telephone," and "insure the right of inmates to have access to the courts and legal counsel."

with an attorney. The collect-only telephones have severely restricted the inmates access to counsel. Evidence has been adduced that the public defender's office and other local offices and private lawyers will not accept collect calls. The few remaining coin-operated telephones in the jail are insufficient to provide inmates with reasonable access to counsel. (*Inmates of Allegheny County Jail* v. *Wecht* (W.D.Pa. 1983) 565 F.Supp. 1278, 1284; *Stewart* v. *Gates* (C.D.Cal. 1978) 450 F.Supp. 583, 588.) Thus, we conclude that the collect-only telephone system unreasonably restricts communications between inmates at the jail and their attorneys. (*Johnson by Johnson* v. *Brelje, supra,* 701 F.2d 1201, 1208; *Tuggle* v. *Barksdale* (W.D.Tenn. 1985) 641 F.Supp. 34, 38.)

Appellant has failed to demonstrate a reasonable justification for the restrictions on respondent's telephone access rights. The only stated objection to the trial court's order requiring installation of a free direct access line to the public defender's office is that it "will consume an inordinate amount of staff time." Appellant also submits that the trial court "should have focused its attention on [the public defender's office's] end of the phone line, rather than on the jail end." Appellant's argument is unconvincing. Use of staff time to accompany inmates to the telephone is required regardless of the type of phone system in use at the jail. Nor has appellant demonstrated that the burden on staff from use of a single free jail telephone line to the public defender's office will compromise jail security. Communication between inmates and attorneys presents no particular threat to security. (*In re Jordan, supra,* 7 Cal.3d 930, 936-937.) ▮▮ Even if marginally more staff time will be expended to escort inmates to the free telephone, no affirmative showing has been made by appellant that such use of jail staff threatens the goal of reasonable security at the facility.

Neither has there been any showing by appellant of an alternative to the free telephone line to provide the inmates with reasonable access to counsel. Appellant's suggestion that the public defender's office should be required to accept inmates' calls is not an acceptable solution to the jail's failure to provide adequate telephone access.[6]

Finally, appellant cannot justify the lack of telephone access by claiming staff or budget shortages. ▮▮ Neither administrative inconvenience nor lack of resources can provide justification for deprivation of constitutional rights. (*Bounds* v. *Smith, supra,* 430 U.S. 817, 825 [52 L.Ed.2d 72, 81]; *Reece* v. *Gragg* (D.Kan. 1986) 650 F.Supp. 1297, 1303; *Inmates of Sybil Brand Institute for Women* v. *County of Los Angeles, supra,* 130 Cal.App.3d 89, 102.)

---

[6] We note that the Humboldt County Public Defender's office was not made a party to this action.

We accordingly conclude that substantial evidence supports the trial court's determination that appellant's collect-only telephone system denied inmates at the jail reasonable access to counsel. (*Johnson by Johnson* v. *Brelje, supra,* 701 F.2d 1201, 1207-1208; *Tuggle* v. *Barksdale, supra,* 641 F.Supp. 34, 37-38.) The trial court's order requiring a free telephone line connecting the jail with the public defender's office is affirmed.

Racanelli, P. J., and Stein, J., concurred.