**Jimmy Lee TUGGLE, Larry Williams and Tim Deberry, Plaintiffs,**

v.

**Eugene BARKSDALE, T.L. Lomax, Max B. Aycock, Sgt. D. Johnson, David Sanders and W. Porter, Defendants.**

No. 83–2237–MA.

United States District Court, W.D. Tennessee, W.D.

Feb. 13, 1985.

Jimmy Lee Tuggle, pro se.

Robert Brannon and Bill Anderson, Brannon, Murrell & Brannon, Memphis, Tenn., for plaintiffs.

H. Wallace Maroney, Jr., Maroney, Sisson & Bailey, Memphis, Tenn., for defendants.

## MEMORANDUM DECISION

McRAE, Chief Judge.

The three plaintiffs in this cause are convicted criminals who were incarcerated in the Shelby County Justice Complex. The complaint charges violations of civil rights under 42 U.S.C. § 1983 by deprivation of the right of inmates to access to the courts. The plaintiffs are recognized as

"jailhouse lawyers" by other inmates, the jail administrators and themselves.[1] The complaint alleges as one cause of action that the defendants denied them access to the courts for their own individual petitions, appeals or new litigation. As another cause of action the plaintiffs assert that defendants have deprived the plaintiff "jailhouse lawyers of the right to assist inmates, thus deprived inmates of the right to receive assistance" from the plaintiffs.

The Court conducted a series of hearings on the issues raised by the pleadings and proof. In some measure, the series of hearings was caused by the shake-up of the staff at the jail. After initial hearings the defendant Sheriff Barksdale replaced the defendant Lomax as Chief Jailer, the defendant Aycock tendered his resignation as Chief Counselor in the jail, and a counselor was fired and later reinstated.

Furthermore the plaintiffs and other inmates filed numerous requests and petitions and complaints between hearings. At one point the "jailhouse lawyers" at the jail attempted to get their way by going on a hunger strike.

Fortunately during the series of hearings, two attorneys appeared at the behest of the plaintiff DeBerry to assist the plaintiff DeBerry and the other plaintiffs with the presentation of the case. Those attorneys were Bill Anderson and Robert M. Brannon, Jr. Although DeBerry would not relinquish full control, they were helpful to the plaintiffs and the Court because they knew the proper procedural and legal approaches and were available to take some necessary discovery for the plaintiffs.

Before addressing the specific issues, the Court must recognize certain controlling holdings of the appellate courts in this area of the law.

Prisoners have a fundamental right to access to the court that requires that they have either adequate law libraries or that legal assistance be provided, and indigent prisoners are entitled to have basic writing materials furnished, *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977). In the absence of alternative means for an indigent inmate to obtain legal counsel, prison rules against one inmate's assisting another in the preparation of legal papers will deny the indigent inmate access to the courts, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). But one inmate does not have the standing to assert the separate constitutional right of another inmate to access to the courts, *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830 (1973); *McGowan v. Maryland*, 366 U.S. 420, 429, 81 S.Ct. 1101, 1107, 6 L.Ed.2d 393 (1961). Unfortunately at times during the hearings the plaintiffs appeared to be of the persuasion that they had a constitutional right to be "jailhouse lawyers," whereas the right exists for the one who is in need of assistance and cannot provide the necessary means of obtaining that access to the court. However, the proof in this case reflects that the deprivations by the jail staff to the plaintiffs in their efforts in their own matters before the court overlap with the same problems faced by inmates who need jailhouse lawyer assistance for access to the courts. Therefore the Court concludes that there is subject matter jurisdiction. Furthermore, clearly the law would forbid retaliation by jail officials against "jailhouse lawyers" for assisting indigent inmates.

The Court will now address the respective issues raised by the proof.

## LEGAL ROOM

In an earlier case pertaining to the rights of inmates in the Shelby County Jail, this Court found that requests of the inmates to see the medic, another inmate for legal assistance and other services were not

---

1. The jail officials do not allow jailhouse lawyers to charge fees, and the plaintiffs have testified that they do not charge fees. However, there is proof that relatively large amounts of money were paid into the commissary account of one of the plaintiffs, and it was paid out in large amounts to his girlfriend or a relative. In any event there is no claim by the plaintiff that defendants deprived them of earnings for legal services.

properly conveyed. The Court ordered that a workable system of written requests be handled through the counselors' office.

In the present relatively new jail facility space was provided for a legal room for inmates to use to work on their own legal petitions or writs and where an inmate who needed assistance could request to go in order to see a "jailhouse lawyer." It was intended that this meeting be initiated with a request to see a "jailhouse lawyer" by a written request slip to be processed by the counselor's office.

The legal room was sometimes equiped with a telephone which was to be used for calls to lawyers and others involved in legal proceedings. The proof shows that from time to time the inmates abused these privileges and the telephone was removed.

█ The proof shows that the request slips to go to the legal room were handled grossly negligently and ignored by the counselors, thereby depriving numerous inmates of their constitutional right to access to the courts. Undoubtedly this was the cause of the resignation of the chief counselor and the firing of another counselor. Therefore the plaintiffs prevailed on this issue by exposing this gross neglect of duty. The Court hereby decrees that a workable system of requests to see "jailhouse lawyers" will be established and maintained.

Other deficiencies in the activities and operation of the legal room will be discussed in other specific issue topics.

## TELEPHONES

The proof showed that the manner in which the use of the telephones by inmates was permitted created serious problems with regard to the rights of the inmates.

At some time in the past, the practice was adopted of taking telephones to the various PODs in the jail so that the inmates might use the telephone to call lawyers, family members or other persons. This was not ordered by the Court. It was a much enjoyed privilege by the inmates, who gradually have transformed it to a right.

One problem that arose during the hearings was the proof that signs had been posted throughout the jail that all telephone calls were being monitored. This was not restricted to any type of call; therefore it included calls to lawyers, the court clerks or family members, where the right to privacy should be honored. During the hearing, the Court expressed such grave concern that this was constitutionally impermissible that the practice was discontinued and the signs were removed.

█ Another problem was developed by the proof in that a high ranking official of the jail testified that negotiations were being conducted with a telephone company so that local inmate calls would go through telephone company operators on a basis whereby each call would be a collect call to the person being called with a charge of seventy cents per call. Most of the inmates in the Shelby County Jail are from this locality. Usually their incarceration has contributed to economic hardship for their families so that this is arbitrary, unduly harsh and primitive to many inmates or their families.

As heretofore indicated telephones were installed in the legal rooms for use in connection with legal matters of the inmates. Because the Chief Counselor had considered that the inmates were using the telephone in the legal room for social or other non-legal purposes, the telephone was removed from the legal room thereby severely hampering the effectiveness of the legal room.

In the legal room the use of the telephone was regulated by having officers in a control room place the calls and then allow the inmates to take over the call on another instrument. This was done to prevent abuse of the use of the telephones, i.e. to prevent the use of that telephone for personal calls and to log who the inmates called. It should be noted that there was proof that some inmates were calling crime victims and trying to intimidate or harass them. The physical arrangement of the

control room and the legal room is such that an officer and inmate who wishes to use the telephone can establish visual contact through windows.

■ The Court concludes that having the officer determine to whom the call is being placed and dialing the number is appropriate and reasonable. However, the officer should not participate in the call by requesting that the party being called be put on the line, by identifying the inmate calling, or by listening to the conversation. The proof reflects that there has been some officer abuse in the past by the manner in which the officer who asked for the party called or identifying the inmate, so that the person being called refused to accept the call even though there was no charge being imposed for the call.

Pursuant to an order of the Court there was forwarded to the Court on September 24, 1984, a plan entitled Collect Telephone System Criminal Justice Complex submitted by Kenneth E. Rook, Jail Operations Manager. It consisted of two parts, Present Free Telephone System and Proposed Secondary or Optional Collect Call System.

■ The Court hereby approves the free telephone system and disapproves the proposed Secondary Telephone System except insofar as collect long distance calls are authorized. It is this Court's opinion that inmates should only be allowed to make long distance calls in cases of emergencies.

## TYPEWRITERS

A necessary piece of equipment for a jailhouse lawyer is a typewriter, and it should be noted that a petition or other pleading which is neatly typed is much preferred over a hardly legible handwritten one by judges, magistrates, clerks and all other court personnel who have to handle the pleading.

Unfortunately the jail officials have been inadequate in furnishing typewriters. The typewriters have been inconsistently allowed and arbitrarily taken away from time to time. Some officials have tried to justify the arbitrary and inadequate conduct by stating that typewriters are a threat to security because the parts can be removed and made into weapons to be used in violent attacks. This is conceivable, but there is no evidence that this has been done or attempted.

There is also evidence that at times typewriters which were privately owned were banned by being taken away.

■ The typewriters that were furnished were too few, too old and outmoded, and too poorly maintained as to state of repair. This must be corrected and constant vigilance must be maintained to continue to provide usable and enough typewriters in the legal room.

## LAW LIBRARY

The adequacy of the law library was a much disputed and difficult issue in these hearings as it was in *Hudson v. Nixon*, No. C–72–378, W.D. Tennessee, and other cases which are filed from time to time. The jail officials and their attorneys have been reluctant to furnish a law library because they contend that this is pretrial detention facility and not a prison where convicted criminals are serving extended periods of time. Therefore it is said this is a place of temporary confinement, but this is not the case for many of the inmates. Many inmates are held at the facility for long periods of time for various reasons, i.e. some have multiple offenses which must be tried separately and therefore they must wait until all trials are over. Some are kept for post-conviction proceedings such as motions for new trial or habeas corpus proceedings. Furthermore the dockets of the state criminal courts are so crowded that it takes months and often more than a year for a case to come to trial. (This is not meant to be a criticism of the state courts. It is a fact of life in spite of hard working judges and supporting court personnel.)

Additionally it should be noted that much litigation is generated concerning the treatment and conditions in the jail while await-

ing trial. While the new jail facility was being built, many serious problems arose concerning the old jail due to its age and lack of maintenance, i.e. inadequate heat in the winter, excessive heat in the summer, malfunctioning plumbing with unsanitary conditions, and continual problems with bugs and rodents.

██ Unfortunately with the move into the new facility, new problems were encountered. The jail operations were put on computers which were not properly understood. This caused persons who were supposed to be released to be lost in the system and thereby caused to remain in jail unnecessarily for weeks. People like this need legal assistance immediately and a minimal law library is necessary for their use or for the use of a jailhouse lawyer.

Additionally, it is noted that the proof shows that the plaintiff DeBerry, who actually has had legal training before he decided to follow a criminal career, discovered an inmate in the jail who was in need of corrective surgery, but the medical personnel had refused to furnish this because it was considered elective and this inmate could wait until he was released from custody. A petition was filed in this court. It was assigned to and heard by the Honorable Odell Horton who ruled that the jail official must provide the surgery as soon as possible and at county expense.

This Court has encountered in this case and in other cases a very difficult factual dispute on the issue of what books and which pocket parts are available to the inmates in the Shelby County Jail, some of whom are there up to two years. Apparently no knowledgeable person has ever been assigned the task of maintaining the law library. Furthermore, there is some proof that the books are abused by some inmates which arms the uninformed jail officials with excuses for not maintaining the library.

██ At some of the hearings the Court expressed its disgust at the widely divergent factual accounts. This prompted the Court to order that the defendants file a list of the books in the law library. On September 24, 1984, counsel for the defendants forwarded to the Court a purported list of the books in the law library. The list demonstrated that some titles to United States Code Annotated were unnecessary and some pocket parts were not current. The Court believes that the volumes and titles of U.S.C.A. which are necessary are all volumes which cover the United States Constitution, and Titles 5, 15, 18 with complete rules of the various courts, 28 with complete rules, 42 and the General Index. In addition, Federal Practice and Procedure by Wright and Miller should be provided as well as Tennessee Code Annotated Volumes 7 and 10 and Criminal Law Library (2–volume set, latest edition) should be furnished. Also, Black's Law Dictionary latest edition.

██ Furthermore, the Sheriff must appoint a counselor who is assigned the job of checking and maintaining the law library. If the counselor is not knowledgeable about law books, he must consult the attorney for the Sheriff or the Law Librarian for the Shelby County Bar Association Law Library for advice as to additional appropriate books. If books are missing or damaged, they must be replaced or repaired immediately, and proper investigation and disciplinary steps must be taken against the persons who damaged the books.

### NOTARY PUBLIC

██ At some point in time the jail officials quit affording the services of a notary public. Presumably this was based upon a United States Court of Appeals for the Fifth Circuit ruling which held that the statute which allowed a certification of the truth of a pleading in lieu of a notary was permissible. This case considered whether the local rule which required a notary should prevail. The appellate court held it did not. However, this was a federal statute and therefore not binding on the state courts. Furthermore, there are many federal courts who prefer to have oaths taken before notaries public, because this is

stronger assurance of credibility. Therefore the defendants must continue to afford notary publics for all inmates at all times.

## ACCESS TO COURTS

One of the most troublesome phases of this Court's work is the prisoner mail and litigation. This Court wishes it would go away; however, this cannot be done. The appellate courts have mandated that prisoners be heard. Therefore it behooves the jail officials of the state and county to accommodate this troublesome protest and challenge. It would be helpful for the county to provide some form of advice and representation to the frustrated and subjectively mistreated inmates. The record reflects that the system has been neglect and neglectful to the extreme disadvantage and misfortune of numerous inmates, so that there is grave need for some persons to help some inmates who cannot get the ear of the members of the bar of this community.

 The attorneys for the plaintiffs have requested a fee of $4,000 which they state is based upon their usual charge. Clearly the plaintiffs have prevailed in the manner contemplated by 42 U.S.C. § 1988, i.e. there was an entire change of jail personnel who had been performing improperly, the monitoring of telephones was discontinued and other remedial provisions were adopted as a result of this lawsuit. However, this Court cannot award attorneys fees upon a general and conclusory allegation of $4,000. Therefore the Court directs that Bill Anderson and Robert M. Brannon file itemized time schedules and an affidavit setting forth their usual charges so that the Court may consider the proper amount to award them as attorneys fees.

The defendants are hereby ordered to implement the holdings of this Court as hereinbefore set forth.

IT IS SO ORDERED.