John Henry WOODEN

v.

Steve NORRIS, et al.

Kenneth LING, et al.

v.

Steve NORRIS, et al.

Garland Bart SHUSHAN on behalf of
himself and all others
similarly situated

v.

Steve NORRIS, et al.

Nos. 3–85–0369, 3–85–0454 and
3–85–0541.

United States District Court,
M.D. Tennessee,
Nashville Division.

May 22, 1986.

John Henry Wooden, Nashville, Tenn., for plaintiff.

Robert B. Grunow, Chief Deputy Atty. Gen., David Himmelreich, Asst. Atty. Gen., Nashville, Tenn., for Pellegrin, Dutton and White.

J. Mark Naftel, Nashville, Tenn., for South Cent. Bell.

## MEMORANDUM

WISEMAN, Chief Judge.

This Court is in receipt of a Report and Recommendation issued by the Magistrate in this action brought pursuant to 42 U.S.C. § 1983 by inmates incarcerated at Tennessee State Prison ("TSP") and the Middle Tennessee Reception Center ("MTRC") challenging the constitutionality of the current inmate telephone system and policies in operation at those facilities. The instant case is a consolidation of three separate actions which were referred to the Magistrate for a determination of whether plaintiffs' claims were frivolous or malicious within the meaning of 28 U.S.C. § 1915(d). The Magistrate was also directed to conduct any necessary hearings under Federal Rule of Civil Procedure 72(b). After holding an evidentiary hearing on plaintiffs' claims, the Magistrate issued a Report and Recommendation concluding that the current inmate telephone system and policies in effect at TSP and MTRC unreasonably restrict and impair plaintiff's First Amendment right of access to the courts, plaintiffs' First and Sixth Amendment rights to counsel, and the First Amendment rights of inmates' families to communicate with the plaintiffs. The Magistrate recommended that the Court preliminary enjoin defendants from operating the current inmate telephone system, and dismiss plaintiffs' requests for monetary relief.

Both plaintiffs and defendants have filed objections to the Magistrate's decision, and defendants have also moved for a *de novo* determination by this Court of the matters contained within the Magistrate's Report and Recommendation. The appropriate scope of review of a Magistrate's ruling on section 1983 actions by prisoners challenging the conditions of their confinement is *de novo*. *See Brown v. Wesley's Quaker Maid, Inc.*, 771 F.2d 952, 954 n. 2 (6th Cir.1985). To that extent, defendants' motion is granted.

### I. *Factual Background*

In order to apply the applicable standard of review and to facilitate evaluation of the parties' objections, the Court believes it would be helpful to reproduce the proposed Findings of Fact issued by the Magistrate.

\* \* \*

### FINDINGS OF FACT

1. Plaintiffs are inmates at the Tennessee State Prison (TSP) and the Middle Tennessee Reception Center (MTRC) in the Tennessee Department of Correction (TDOC). Plaintiff John Wooden (hereinafter "Wooden"), is employed by TDOC as legal helper to other prisoners.[1] Other

---

1. Prisoners have a right to legal assistance under the First Amendment, *Johnson v. Avery*, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969),

plaintiffs are prisoners who have actions pending in the state or federal courts or whose personal circumstances are impacted adversely by TDOC's telephone policy.[2] With the exceptions discussed below, the current TDOC inmate telephone system at the TSP and MTRC requires operator assistance for local and long distance telephone calls. Under this system, an inmate must secure the assistance of a American Telephone and Telegraph Company (AT & T) telephone operator to place a local call. The cost of a local call under TDOC's current telephone system is one dollar and twenty-five cents ($1.25) for each local telephone call and a two dollars and twenty-five cents ($2.25) cost for a "person to person" local call. AT & T charges South Central Bell for the operator service. South Central Bell, in turn, passes these costs on to the users of this service. The cited rates were approved by the Tennessee Public Service Commission. Prior to a discussion of the effects of this telephone system upon the plaintiffs, a brief statement of this telephone system's historical origin in TDOC institutions is necessary.

2. According to Jim Rose (hereinafter "Rose"), Director of Special Programs for the Tennessee Department of Correction and former TSP Warden, early in 1971, there were coin operated telephones in each cell block at the TSP facility. Inmates who wished to place telephone calls could purchase dimes to operate the telephones in the prison commissary with "script." "Script" was the inmate currency that was produced by TDOC as the medium of exchange for inmate purchases at TDOC institutions. The use of "Script" was to eliminate the flow of "free world" money. (Testimony of Rose).

3. Rose, whom the Magistrate deems to be an expert in these matters, explained that the presence of free world money in the prisons generates and fosters illicit trade and activities among prisoners, such as robberies, drug dealings and similar activities. The availability of coins for use in the coin operated telephone system generated such problems at TSP. Other problems with the coin operated telephones for inmates included fraudulent billings for long distance calls to third parties. Some coin operated telephones were vandalized. There were some instances of inmates who called victims of their crime. In 1979, these events caused TDOC to phase out its coin operated telephones for another telephone system and to create a cashless prison environment. (Testimony of Rose).

4. In 1979, TDOC undertook discussions with South Central Bell, the local telephone operating company, to substitute another telephone system for its coin operated telephones. (Testimony of Rose and Dennis Reed, Sales Manager, South Central Bell, hereinafter "Reed"). TDOC officials believed that a coinless telephone system would eliminate completely the illicit dealings in the prison population that the coin operated system generated. (Testimony of Rose). For the telephone company, the coinless operated telephones posed lower maintenance costs and a more profitable return. (Testimony of James W. Hawkins, Manager for Regulatory Matters, South Central Bell, hereinafter "Hawkins" and Reed). Reed, who specializes in this customer market, described the TSP telephone account as an attractive account with persons who need public telephones. (Testimony of Reed). The rates or tariffs charged for the TDOC's coinless operated system were approved by the Public Service Commission and are the same as other operated assisted calls. (Testimony of Hawkins, Plaintiffs' Exhibit No. 4). The installation of the coinless telephones at all TDOC institutions, except community ser-

and the State has chosen inmate legal assistant form of such assistance.

**2.** *Shushan v. Pellegrin,* No. 3:85–0541 is brought as a class action. In this case, the Magistrate finds that a ruling on the constitutional issues as to the named plaintiff will afford the appropriate relief to all prisoners similarly situated. Thus, class certification is unnecessary in this case. See, *Craft v. Memphis Light, Gas and Water Division,* 534 F.2d 684, 686 (6th Cir.1976), *aff'd on other grounds,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978).

vice centers, was completed in mid-1982. (See Defendants' Exhibit No. 11, Section VI, B, 1).

5. Although the coinless telephone system is the principal telephone system for inmates in virtually all TDOC facilities, there are other telephones available for inmates in special situations. (Testimony of Rose, Howard Cook, Warden at MTRC, hereinafter "Cook," Dennis Hopf, a counselor at TSP, hereinafter "Hopf"). For example, the State's direct line telephones that are used by TDOC employees are available to inmates on a restricted basis. These State telephones are available through a TDOC counselor or other TDOC employee for domestic emergency situations and legal matters. (Testimony of Cook and Hopf). Whether a domestic or legal emergency situation exists is determined by the designated correctional official for the particular TDOC institution. (Testimony of Cook and Hopf). Some domestic emergency long distance telephone calls on the state telephone system are permitted free, if the inmate has no more than five dollars in his prison account. (Testimony of Hopf).

6. The other relevant aspects of the current TDOC telephone policy for plaintiffs are as follows:

II. PURPOSE: To establish departmental policy for granting telephone privileges to inmates.

III. APPLICATION: To Wardens of adult institutions and community service centers.

IV. DEFINITIONS: None.

V. POLICY: It shall be the policy of the Department that all inmates be granted reasonable and equitable access to make telephone calls.

VI. PROCEDURES:

A. *Scheduling*

1. The *use of a telephone for a ten minute local or long* distance call shall be scheduled *at least once each week for all maximum, close and medium security inmates.*

2. The use of a telephone for a *ten minute local or long distance call shall be scheduled at least twice each week for all minimum security inmates.*

3. *Additional or unlimited access to the use of a telephone may be scheduled as part of an earned privilege or grading system for any or all inmates.* (See Policy # 503.03)

4. All inmates except those in punitive or administrative segregation shall have such access to the use of a telephone.

a. Punitively segregated inmates shall not be allowed access to a telephone except in accordance with paragraph A.5, below.

b. *Administratively segregated inmates shall be scheduled for a ten minute local or long distance phone call at least but no more frequently than one time each month.* Any additional access for such inmates shall be in accordance with paragraph A.5, below.

5. *Unscheduled emergency telephone calls may be granted to any inmate or in addition to regularly scheduled calls, at the discretion of the Associate Warden of Treatment or the Associate's designee.*

6. See Policies # 501.02 and 105.09 for the regulations regarding an inmate's telephone access to attorneys and courts.

7. No restrictions shall be placed on [whom] an inmate may call, unless same is proscribed in another Departmental policy.

B. *Equipment*

1. *No pay phone or instruments requiring coinage to operate shall be used or installed for inmate calls after June 30, 1982. Pay-phones are permissible for installation in community service centers.*

2. *If available, local-calls-only telephones may be installed for inmate usage. Such phones operate on the basis the caller's lifting the receiver and an operator's coming on the line*

*to connect the requested local number.*

3. If available, long distance-collect-only telephones may be installed, but third party calls or such instruments shall not be permitted.

4. *If the only available type of telephone access is the state institution line, then such shall be permitted at the Warden's discretion on a scheduled basis only.*

5. *The institution may bear the cost of the installation, and service fees for phones dedicated to inmate usage, but the charging of long distance calls to state institution phone lines shall not be permitted except at the discretion of the Associate Warden of Treatment or [his] designee.*

C. *Monitoring*

\* \* \*

D. *Abuse of Privilege*

1. Any abuse of a telephone by an inmate shall be the subject of a disciplinary action. (See Policy # 502.01)

   a. Threatening or obscene telephone calls

   b. Calls charged to a third party

   c. Violation of the telephone schedule and/or duration rules

   d. Calls made for the purpose of creating a disturbance within the institution or for the purpose of planning or accomplishing a criminal act

2. An inmate shall not be punished by the discipline board by suspending or limiting telephone privileges, unless the inmate has been found guilty of an infraction related to the use of a telephone. The privilege cited in paragraph A.5 above, cannot be abridged.

3. An inmate found guilty by the discipline board of charging unauthorized collect calls to the state number or to a third party shall be ordered to reimburse the state or victim and may be subject to criminal prosecution. All phone privileges of such an inmate (except those permitted according to paragraph A.5, above), shall be suspended until the ordered reimbursement is made.

E. *Records*

1. If the Warden authorizes that a telephone call be monitored (see paragraph C.1, above), the Warden shall place a memo in the subject inmate's institutional file stating that the call was monitored.

2. Long distance calls charged to a state number or line by inmate shall be recorded on Form # FA–0030 (see Policy # 211.02). (Emphasis added).

(Defendant's Exhibit 11). Some plaintiffs report that favored inmates are given longer periods of time beyond the ten minute restriction for telephone calls. (Testimony of Wooden and Warren). According to Reed, TDOC officials cannot monitor telephone calls on this system, but TDOC officials can "cut-off" or disconnect the parties to an inmate telephone call on this coinless system. (Testimony of Reed and Cook).

7. The TDOC policy that governs the inmates' use of the telephone for access to the courts or for legal assistance states, in pertinent part, as follows:

*"Access to the Courts,"* No. 501.02, at p. 2 . . .

F. *Each inmate shall have access to a restricted "local" or "collect only" telephone system. Calls may be restricted to not more than five minutes. If an inmate claims that it is essential to contact an attorney by long distance phone and claims, given the situation that communication by mail would be too slow, the inmate shall be permitted, with the approval of the Warden or designee, to contact the attorney (during normal office hours) by staff telephone.* Inmates permitted to contact an attorney by staff telephone shall be required to pay for the telephone call or to place the call "collect." *The call shall be restricted to five minutes.* The Warden or designee shall coordinate the telephone calls to the attorney and immediately determine charges for the call applicable to the inmates trust fund account. *When the call cannot be made*

*collect and the inmate is indigent, the Warden may approve the placing of the call at state expense.* (See Policy # 503.-08).

(Defendants' Exhibit No. 9). Under TDOC's policy, inmates are allowed one-half as much time to consult with the court or counsel on court matters, but the number of such calls is unclear. (*Compare* Defendants' Exhibit No. 11, Section V, A *with* Defendant Exhibit No. 9, Section VI, F).

8. The times during which the telephones at TSP are generally available are as follows:

*Listed below are the hours during which the telephones shall be open:*

| | |
|---|---|
| Monday through Friday | 8:30 a.m.—10:30 a.m. |
| | 5:30 p.m.—7:45 p.m. |
| Sat., Sun., holidays | 9:00 a.m.—1:30 p.m. |
| | 3:00 p.m.—7:30 p.m. |

During this period, the OIC [Officer in Charge] is permitted to close down the long row of phones after he has run the phones initially.

Operating procedures for the telephones shall be:

a) All inmates using the telephone shall first be signed into a telephone log book.

b) All inmates using the telephone shall have a minimum of ten (10) minutes to use it, unless no other inmate is waiting to use it.

c) Telephones will be operated on a first-come, first-served basis.

(Plaintiffs' Exhibit No. 3). For working inmates, the morning hour restriction poses problems for telephone calls to courts, counsel and governmental offices. (Testimony of Wooden).

9. As to the availability of the state telephone system to inmates, Hopf, a counselor at the TSP, testified about his placement of telephone calls for inmates on their legal matters. Hopf's clientele consists of one hundred fifty (150) inmates. (Testimony of Hopf). Hopf is one of five counselors at the main prison that has a population in excess of fifteen hundred (1,500) inmates. *Id.* To place legal calls through Hopf, an inmate must contact his unit officer and obtain a pass to see the counselor. Hopf is available during the hours from approximately 9:00 a.m. to 4:00 p.m. For local calls, Hopf will secure an outside line and dial the telephone number for the inmate. If there is an answer, Hopf will assure himself that the person on the line agrees to talk with the inmate. For long distance calls, similar procedures are followed, but the counsel must log long distance calls on required TDOC forms. For long distance calls, Hopf will identify himself to the person or the long distance operator after obtaining assurance that the caller desires to talk with the inmate; the inmate then is allowed to conduct the telephone dialogue. On legal matters, Hopf steps outside in the hallway to allow the inmate privacy. Hopf states that he places approximately 30 calls per week in this manner. Hopf characterizes calls to lawyers as "routine calls." (Testimony of Hopf).

10. According to Howard Cook, the Warden at MTRC, a similar procedure is followed at MTRC. For legal assistance matters, the Assistant Warden of Treatment or the Warden at MTRC will handle the inmate's request for use of the state telephone system and determine whether there is emergency need to use the telephone for legal assistance. At MTRC, there are two telephones in each guild that occupies some fifty prisoners. Access to this telephone is extremely limited. (Testimony of Shushan and Warren). The telephones are installed in an area that impairs the confidentiality of counsel-client discussions. *Id.*

11. As noted, the principal reasons for the installation of coinless telephones were to eliminate undesired calls and fraudulent third party billings and to remove "free world" money from the prison population. Plaintiffs who testified at the hearing acknowledged that regrettably some illicit traffic behind the walls continues notwithstanding the absence of script or coin. Other items of value such as cigarettes, have been substituted as the medium of exchange. South Central Bell through

technological devices is able now to eliminate, almost completely, the cited third party billing problems to such extent that fraudulent third party billing and credit card matters are no longer a substantial security problem (less than five cases in recent times). (Testimony of Bob Kidler, Staff Manager for Security, South Central Bell, hereinafter "Kidler"). As Hopf described, the placement of unsolicited or unwanted telephone calls can be handled satisfactorily without use of the coinless telephone system which has impacted the plaintiffs adversely.

12. Plaintiffs testified that the coinless telephone system poses significant problems for their access to the courts, counsel and their families. (Testimony of Wooden, Shushan and Warren). On court matters, mail is deemed an inadequate substitute for the telephone. Telephone access is particularly important to inquire as to receipt of filings and to respond to deadlines for court filings and receipt of court petitions. (Plaintiffs' Exhibit No. 7, Testimony of Shushan and Warren). Contact with favorable witnesses for their appearance at court hearings is more effectively accomplished by telephone calls, because sometimes hearings are scheduled on short notice. (Testimony of Warren). For example, as one inmate described his problems with access to courts and counsel under the current telephone system.

I am an inmate incarcerated in this institution and am experiencing great difficulty in contacting my attorney by telephone.

My attorney is Covington Johnson and his address is Franklin, Tennessee. His phone number is 794–0807. This is a local call. However, prior to my arrival at this institution, Mr. Johnson advised me that he would be unable to accept any collect calls because of the high phone rate for such calls ($1.25 per local collect call). Therefore, I have no way of effectively communicating with my attorney because the delay in the mail system here prevents corresponding by mail because of the legal deadlines involved in my case which is in the process of being appealed to the Court of Criminal Appeals. I have been unable to receive assistance from any of the employees at this institution in regards to obtaining a free phone call.

It is extremely urgent that I contact my attorney by telephone as soon as possible so that I might discuss certain legal matters with him at length. I would appreciate your looking into the matter and, if possible, arranging for my use of a telephone at your earliest convenience. Thank you.

(See, Response to Defendants' Motion for Dismissal or Summary Judgment (Exhibit No. 3). Charles Andrews' Affidavit and letter to Howard G. Cook, April 12, 1985, that is attached to Court Document No. 8, in *Ling, et al. v. Pellegrin, et al.*, No. 3:85–0454).

13. Plaintiffs explained that several court clerks' offices do not accept collect telephone calls. (Testimony of Wooden, Shushan and Warren). Telephone calls to these offices are sometimes necessary to obtain continuances of court imposed deadlines. Inmates are transferred between institutions. These transfers lead to delays in receipt of an inmate's mail. These mail delays pose problems with timely receipt and responses to Court Orders. (Testimony of Warren).

14. Other federal and state offices that maintain relevant records, such as the TDOC Central Records office, do not accept collect telephone calls. (Testimony of Shushan). Reliable information as to sentencing and other institutional information for court proceedings and parole hearings can be ascertained through such offices. (Testimony of Shushan and Warren).

15. In addition, several counsel who were either retained or appointed to represent plaintiffs do not accept automatically local telephone calls. (See, e.g., Plaintiff's Exhibit No. 1). Other plaintiffs relate that their counsel were sometimes out of the office upon their initial calls, thus requiring several telephone calls to reach counsel. (Testimony of Shushan and Warren). Un-

der the coinless system, these repetitive telephone calls result in substantial expenses to plaintiffs, given that inmates are charged five to nine times more than a free world person is charged for a local telephone call. The cost of such calls may well have caused prisoners' counsels' refusal to accept the inmates' calls on this telephone system. (Testimony of Wooden and Shushan).

16. Telephones are also necessary to confirm whether legal materials mailed to counsel actually were received. (Testimony of Warren). Prisoners express an important need to be able to contact counsel on the day before an evidentiary hearing or court appearance. (Testimony of Warren).

17. Inmates without any counsel have reported that there are no adequate substitutes for the use of the telephone on legal matters. Inmate legal helpers are not permitted to make telephone calls for inmates whom they are helping on legal matters. (Testimony of Shushan). According to Wooden, who is a legal helper, many inmates have limited education, and the only effective method of their communications is oral communication. Written inquiries usually occasion delays in getting a response, particularly in restricted Units I and VI at TSP. (Testimony of Wooden and Warren).

18. As to family calls, many inmates have limited financial resources. The highest inmate job pays fifty-five ($55.00) dollars a month. (Testimony of Shushan and Warren). Many inmates, particularly at MTRC, are unemployed. (*Id.*) Inmates and their families with these limited resources cannot afford these telephone rates for local calls. (Testimony of Wooden). As noted by the Supreme Court, federal authorities consider an inmate's communications with his/her family to serve valid rehabilitation purposes. *Procunier v. Martinez*, 416 U.S. 396, 412, n. 13, 94 S.Ct. 1800, 1811, n. 13, 40 L.Ed.2d 224, 239–40, n. 13 (1974). The Magistrate is certain the state correctional officials share such views.

19. Moreover, the effectiveness of inmate access to the state telephone system, particularly at MTRC, was questioned by inmates who submitted evidence at this hearing. Wooden stated that there are some free telephone calls at the operation office at the main prison, but free calls are available only for favored inmates. According to seventy-one (71) prisoners who submitted identical affidavits, at MTRC "[t]here is no other opportunity to use a telephone at MTRC except through the operator assistance system." (Plaintiffs' Collective Exhibit Nos. 11 and 12).

20. One plaintiff by affidavit explained his dilemma on a legal matter with the current TDOC telephone policy.

Presently, I am attacking the judgment of conviction on the sentence which I am now serving. In an effort to secure relief, I have filed a pro se petition for post conviction relief with the court of conviction, Criminal Court for Davidson County. The petition was originally mailed on January 4, 1985. After a period of approximately four months had elapsed, I prepared and forwarded a letter to the Criminal Court Clerk, Joe Torrence, in an effort to determine the status of the petition for post conviction relief I had filed with the Court. Hearing nothing further from my May 9, 1985 letter, I attempted to contact the Criminal Court Clerk for Davidson County by telephone at the Middle Tennessee Reception Center, the facility in which I am incarcerated. Therefore, on June 3, 1985, at approximately 10:15 a.m., I attempted to place a local call to the Criminal Court Clerk for Davidson County. I went to the operations center at Middle Tennessee Reception Center and requested such a call of Officer Judy Smithson. Officer Smithson advised me to see Corporal Dennis Talley. I then asked Corporal Talley for permission to make a legal call and Corporal Talley advised me to use the telephone in the guild and I then advised Corporal Talley that I could not use the guild telephone because the guild phones were operator assisted only and that the court would not accept a collect

call. Corporal Talley then advised me to see my counselor, Mr. Strong. I proceeded to see Mr. Strong who advised me that he could not authorize such a telephone call and that I would have to see his supervisor, Mr. Kenneth Locke. I then went to see Mr. Locke who stated that he knew nothing about any telephone calls and he told me to see Mr. David Wilson at the law library. Mr. David Wilson advised me that the law library did not have an outside telephone line and that no outside calls were placed from the telephone in the law library. Therefore, I am unable to make a collect call to the court and am unable to make a regular call to the court in reference to my petition for post conviction relief which I filed some five months earlier. Affidavit of Kenneth H. Long, pp. 1–2.

21. The Magistrate does not doubt the accuracy of Cook's or Hopf's description of the procedure for inmate use of state telephones, but there is significant evidence that the system does not work well in actual practice. For example, in *Ling v. Pellegrin,* the plaintiffs were ordered by the Magistrate to designate one of their number to be their representative at the preliminary injunction hearing within a certain deadline. The Magistrate's Order was received near the deadline and the plaintiffs in *Ling et al. v. Pellegrin, et al., supra,* could not get access to a telephone to call the Clerk of the Court to apply for an extension. These plaintiffs would not have met the Court imposed deadline in this case, but for a relative who resides in the Nashville area and who hand-delivered the designation papers. (Testimony of Warren).

\* \* \*

Having reviewed the transcript of the hearing upon which the Magistrate's findings are based, the Court finds that other aspects of the administration of the facilities discussed at that hearing and in affidavits subsequently submitted by the defendants are relevant to plaintiffs' claims. According to the testimony elicited at the hearing, there are 30 coinless telephones available at TSP for the use of approximately 1,500 inmates. (Testimony of Rose). Ten of these telephones are located in each of the three housing units for general population inmates. (Testimony of Wooden). In addition, there are two telephones located in each of the two housing units for segregated inmates, and one telephone located in the housing unit for death row inmates. (*Id.*) There are two telephones available at the prison hospital which are rotated from ward to ward. (*Id.*) Finally, ten telephones are located on the prison ballfield. (*Id.*) At MTRC, there are 30 telephones available for the use of approximately 600 inmates. (Testimony of Rose). Two of these telephones are located in each of the 15 housing units, and are placed four or five feet apart. (Testimony of Rose, Cook).

With respect to the number and duration of calls permitted to be made by inmates, the Court would note that the TDOC policy statements cited by the Magistrate set forth the minimum number and duration of such calls. That policy provides that use of a telephone for non-legal local or long distance calls "shall be scheduled *at least* once each week...." (emphasis added). As to legal calls, TDOC policy provides that calls "... *may be* restricted to no more than five minutes." (emphasis added). The testimony of plaintiff Warren indicates that the policy restriction on the minimum duration of calls is rarely enforced. (Testimony of Warren). In addition, testimony elicited at the hearing, including that of the inmates themselves, indicates that the number of calls permitted may amount to three or four per week. (Testimony of Shushan and Rose).

The Magistrate found that the hours during which the telephones were made available for inmate use presents difficulties for working inmates. The telephone schedule cited by the Magistrate, however, does not apply to the telephones located on the TSP prison ballfield which are available from about 8:00 a.m. until 11:00 a.m. and from 1:00 p.m. until the yard closes in the evening. (Testimony of Rose). In addition,

Rose testified that working inmates may secure a pass from their work area supervisor to go to their housing unit if they need to make a telephone call during the day. (Testimony of Rose).

The Magistrate also found that inmate use of state telephones does not work well in actual practice. The testimony of plaintiff Wooden indicates that the procedure for inmate use of state telephones for free local legal calls is similar to that described in the policy statement cited by the Magistrate in reference to the use of state telephones for emergency long distance calls to an attorney. The Magistrate's conclusion that this procedure is inadequate was based in part on the affidavits of plaintiff Ling and inmate Charles Andrews. In this regard, defendants have subsequently submitted to this Court a copy of Warden Cook's response to Andrews' request to call his attorney. (Defendants' notice of filing documents—Exhibit to affidavit of Howard Cook). In that response, Cook requested that Andrews provide him with more specific information as to whether the telephone call was necessary to avoid any deadlines imposed by the court in that matter such that written correspondence would be deemed inadequate. (*Id.*) Cook's affidavit indicates that because he received no further response from Andrews, he assumed that the matter was not critical to a specific deadline. (*Id.*)

With respect to Ling's affidavit, defendants have submitted the affidavits of Sam Strong and Kenneth Locke, counselors at MTRC. (Defendants' notice of filing documents—affidavits of Stan Strong and Kenneth Locke). Both affiants state that Ling provided little or no information as to why written correspondence was inadequate in handling Ling's legal matter. (*Id.*) Ling did not provide them with any documentation in connection with his request. (*Id.*) Strong indicates that if Ling had shown him the May 9, 1985 letter he had sent to the Davidson County Criminal Court Clerk, he would have recommended that Ling be allowed to make a free emergency legal telephone call pursuant to TDOC policy. (*Id.*)

## II. *Legal Background*

Based on a thorough review of the applicable case law, the Court concludes that the facts as found by the Magistrate and supplemented herein with respect to the current inmate telephone system and policies at TSP and MTRC do not unreasonably restrict and impair plaintiffs' constitutional rights. In *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), the Court reaffirmed its prior holdings that state prisoners have a constitutional right of access to the courts. This right "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." 430 U.S. at 828, 97 S.Ct. at 1498, 52 L.Ed.2d at 83. The Court noted that:

> ... while adequate law libraries are one constitutionally acceptable method to assure meaningful access to the courts, our decision here, as in [*Younger v.*] *Gilmore,* [404 U.S. 15, 92 S.Ct. 250, 30 L.Ed.2d 142] does not foreclose alternate means to achieve that goal.... Any plan, however, must be evaluated as a whole to ascertain its compliance with constitutional standards.

430 U.S. at 830, 832, 97 S.Ct. at 1499, 1500, 52 L.Ed.2d at 84, 85 (footnote omitted).

In reaching its decision, the *Bounds* court reviewed a number of its prior decisions regarding inmates' right of access to the courts. As noted in *Bounds,* this right also requires states to provide indigent inmates with writing materials to prepare legal documents, notarial services to authenticate them, and stamps to mail them. 430 U.S. at 824–25, 97 S.Ct. at 1496, 52 L.Ed.2d at 81. In addition, states are required to allow inmates to be assisted by other inmates on legal matters. 430 U.S. at 823–24, 97 S.Ct. at 1495–96, 52 L.Ed.2d at 79–80 (citing *Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969); *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974)).

Prior to its decision in *Bounds,* the Court addressed the constitutionality of prison restrictions on an inmate's access to counsel, and his ability to communicate by written correspondence with those outside the prison. *See Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974). Ruling invalid a ban on inmates' access to law students and paraprofessionals employed by an attorney, the Court explained that the right of access requires that inmates be given "a reasonable opportunity to seek and receive the assistance of attorneys" and "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." 416 U.S. at 419, 94 S.Ct. at 1814, 40 L.Ed.2d at 243. In evaluating right of access claims, the Court indicated that a balancing test would be required:

> ... prison administrators are not required to adopt every proposal that may be thought to facilitate prisoner access to the courts. The extent to which that right is burdened by a particular regulation or practice must be weighed against the legitimate interests of penal administration and the proper regard that judges should give to the expertise and discretionary authority of correctional officials....

416 U.S. at 420, 94 S.Ct. at 1814–15, 40 L.Ed.2d at 244. Therefore, in evaluating plaintiffs' claims that the current inmate telephone system and policies unreasonably restrict their access to the courts and coun-

sel, the Court will consider the measures provided by the prison for ensuring access as a whole, and the justification offered by defendants for utilizing this particular telephone system.[3]

The plaintiffs in *Martinez* also challenged a prison regulation requiring censorship of prisoner mail to all individuals who were not either attorneys or public officials. 416 U.S. at 399–400, 94 S.Ct. at 1804–05, 40 L.Ed.2d at 232. The Court invalidated this regulation because the government failed to show that the regulation furthered an important governmental interest unrelated to the suppression of expression, and that the restriction was no greater than necessary to further that interest. 416 U.S. at 415–16, 94 S.Ct. at 1812–13, 40 L.Ed.2d at 241–42.

The Magistrate cited the *Martinez* Court's decision with respect to mail censorship to support his conclusion that the telephone system and policies unconstitutionally infringed on the rights of inmates' families to communicate with them. In this Court's view, however, the regulations at issue here do not involve the issue of censorship, but rather the issue of whether prison officials are required to provide inmates with a particular method and level of communication with those outside the prison. In this regard, the decision of the Supreme Court in *Pell v. Procunier,* 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), is instructive. *Pell* involved a challenge by prison inmates and members of

---

**3.** This "totality of circumstances" approach to meaningful access-to-court claims was applied by the Northern District of Illinois in *Walters v. Thompson,* 615 F.Supp. 330 (N.D.Ill.1985). In *Walters,* a class of inmates who had been placed in a prison segregation unit claimed that they had been denied meaningful access to the courts because they had no physical access to the prison law library and were assisted by inmate clerks inadequately trained in the law. 615 F.Supp. at 333. Applying the "totality of circumstances" approach, the court stated:

> Plaintiffs point to several practices that by themselves may not rise to the level of unconstitutionality, but which reinforce the unacceptable operation of the current system.
> Plaintiffs are denied all telephonic contact with their attorneys. Given that plaintiffs are

denied use of the telephone because of their violation of prison rules, lack of telephonic contact with their attorneys might not be unconstitutional if they had fuller access to the prison library or to trained legal personnel. *Cf. Johnson by Johnson v. Brelje,* 701 F.2d 1201, 1208 (7th Cir.1983). They, after all, can still communicate with their attorneys by mail. In this case, however, they claim that their access to legal materials is extremely attenuated and they have no contact with any trained legal personnel within their institutions. Consequently, the lack of any telephonic access to counsel weighs more heavily on the side of unconstitutionality ... (citations omitted).

615 F.Supp. at 340.

the news media to a prison regulation prohibiting face-to-face interviews by the media with individual inmates whom they specifically name and request to interview. 417 U.S. at 819, 94 S.Ct. at 2802–03, 41 L.Ed.2d at 500. In addressing the prisoners' claim, the Court stated that First Amendment challenges to prison restrictions are to be analyzed "in terms of the legitimate policies and goals of the corrections system." 417 U.S. at 822–23, 94 S.Ct. at 2804, 41 L.Ed.2d at 501. A relevant factor in applying this analysis, the Court explained, is the alternative means of communication permitted by the prison administration with those outside the prison. 417 U.S. at 823, 94 S.Ct. at 2804, 41 L.Ed.2d at 502. Noting that the prison allowed uncensored written correspondence as a result of the Court's earlier decision in *Martinez, supra,* and visitation with an inmate's family, friends, attorney, and clergy, the Court concluded that the content-neutral restriction was adequately justified by the prison administration's interest in maintaining security. 417 U.S. at 824–28, 94 S.Ct. at 2805–06, 41 L.Ed.2d at 502–05. Thus, in evaluating plaintiffs' claims in the instant case with regard to the effect the current telephone system and policies have on the ability of inmates' families to communicate with them, the Court will consider the alternative means of communication offered by the prison administration and the justification offered by the defendants for utilizing this particular telephone system.

### III. *Application*

At the hearing before the Magistrate, defendants submitted various prison policy statements which set forth the measures taken by the prison administration for ensuring inmates' access to courts and counsel. Those policy statements indicate that:

(1) Inmates are permitted access to a law library which is open at least 40 hours per week (Exhibit 9, TDOC Policy 501.02);

(2) Inmates are permitted to assist one another in the preparation and filing of legal papers (*Id.*);

(3) Inmates are provided with writing materials, copy, and notary services by the prison administration for the preparation of legal documents (*Id.*); and

(4) Inmates' correspondence with court officials and counsel is unrestricted and uncensored, and postage is provided by the prison administration for the legal correspondence of indigent inmates to courts or counsel (*Id.*).

With respect to inmates' access to counsel other than by written correspondence, prison policy provides that attorneys may visit inmates at the institution "not less frequently than from 8:00 a.m. to 4:30 p.m. five days a week" and that "[u]nder emergency situations or for other good cause, every reasonable attempt will be made to provide such access during other days/hours." (Exhibit 8, TDOC Policy 105.09). In addition, the policy provides that every reasonable effort will be made to assure that the inmate and his attorney meet alone or in such a manner that their discussions cannot be overheard. (*Id.*)

■ The Court finds that the proof adduced at the hearing establishes that access to courts and counsel provided by telephonic communication is broader than indicated by the Magistrate. With respect to the coinless telephones, the Court finds that there are an adequate number of telephones available for inmate use at both TSP and MTRC. Prison policy statements set forth the minimum number of calls allowed per week and the duration of such calls. Consequently, plaintiffs testified that the number of calls made by inmates in a given week may be much higher and the duration of those calls may be much longer than that set forth in the policy statements. In addition, the proof indicates that working inmates may secure a pass to make a telephone call during the day, or they may use the telephones located on the prison ballfield to make calls in the evening. Finally, prison policy indicates that inmates' telephone conversations are not monitored by prison officials.

■ Use of the state telephone system by inmates to make free telephone calls to courts, counsel, and members of the inmate's family provides another avenue for telephonic access. As stated by the Magistrate in his Findings of Fact, calls made by inmates on these phones are "routine." Furthermore, plaintiffs have not established that the authorization procedure for use of these phones is unreasonable or has been abused. Thus, the Court finds that a reasonable amount of telephonic access is provided at TSP and MTRC through both the coinless telephones and the state telephones.

■ Moreover, the Court concludes that the justification offered by the administration for installation of the coinless telephone system is compelling. As described by the Magistrate, the coin-operated telephone system in existence at the prison prior to 1979 led to fraudulent billing, vandalism, and inmate calls to victims of their crimes. In addition, introduction of free-world money needed to operate these phones led to illicit trade and activities among prisoners. Although the Magistrate believed that the prison administration could have implemented less restrictive alternatives to combat these problems, unless a constitutional violation has been established, the federal courts should not delve into the day-to-day resolution of "complex and intractable" prison problems "which are peculiarly within the province of the legislative and executive branches of government." *Martinez,* 416 U.S. at 405, 94 S.Ct. at 1807, 40 L.Ed.2d at 235. Accordingly, the Court concludes that the current inmate telephone system and policies in effect at TSP and MTRC do not unreasonably restrict and impair plaintiffs' First and Sixth Amendment rights of access to courts and counsel.

■ Similarly, the Court is not persuaded that the coinless telephone system infringes upon the First Amendment rights of inmates' families to communicate with them. In this regard, defendants have subsequently submitted prison policy statements concerning visitation privileges at TSP and MTRC. (Defendants' notice of filing documents—Exhibit to affidavit of Jim Rose). That policy provides that individuals approved for visitation may visit once each week on weekends, holidays, or at least one evening per week. (*Id.*) In addition, special consideration is given to visitors who have traveled great distances, and in the case of family emergencies. (*Id.*)

As noted above, in addition to personal visitation, inmates' families may communicate with the inmates through uncensored written communication, and through use of the state telephone system free of charge under certain circumstances. Thus, the Court concludes that the current inmate telephone system and policies in effect at TSP and MTRC do not unreasonably restrict and impair the First Amendment rights of inmates' families to communicate with them in light of the alternative means of communication available at the prison and the justification offered by the prison administration for utilizing the coinless telephone system.

### IV. *Prior Decisions Involving Telephonic Communication*

The Court is not persuaded that lower federal court decisions addressing the constitutionality of particular prison telephone systems and policies, including those cited by the Magistrate, mandate a different result. Having conducted an exhaustive review of those cases, the Court concludes that although many courts agree that inmates may be entitled to communicate by telephone with those outside the prison, they have yet to agree on the minimum level of telephonic communication constitutionally required for inmate use.[4] For pur-

---

**4.** A number of courts have stated that prison officials are required to provide inmates with at least some access to telephonic communication. *See Feeley v. Sampson,* 570 F.2d 364, 373 (1st Cir.1978); *Dawson v. Kendrick,* 527 F.Supp. 1252, 1276, 1314 (S.D.W.Va.1981); *Dillard v. Pritchess,* 399 F.Supp. 1225, 1240 (C.D.Cal.1975); *Brenneman v. Madigan,* 343 F.Supp. 128, 141 (N.D.Cal.1972). Other courts have recognized this right, and have specified a certain level of

poses of the instant case, however, the Court finds that resolution of this apparent conflict is unnecessary because the fact situations involved in the cases cited by the Magistrate and others expressing dissatisfaction with a particular level of telephone service for inmates are distinguishable from the inmate telephone system and policies at issue here.

The Magistrate relied principally on six lower federal court decisions to support his conclusion that the telephone system and policies in effect at TSP and MTRC are constitutionally deficient. In *Johnson by Johnson v. Brelje*, 701 F.2d 1201 (7th Cir. 1983), plaintiffs were criminal defendants found unfit to stand trial who had been committed to a mental health institution. The *Johnson* plaintiffs brought a section 1983 action challenging a number of the conditions relating to their confinement, including the telephone policy in effect at the mental health facility. That policy limited plaintiffs to two ten-minute calls per week to both counsel and the inmate's family.

701 F.2d at 1207–08. Because the court found that these plaintiffs had a special relationship to the courts by virtue of their status, and based on defendants' failure to offer any justification for the telephone restrictions, the court ruled that the inmate telephone policy unreasonably restricted communications between the plaintiffs and their attorneys. *Id.*

As noted earlier, the proof adduced at the hearing indicates that inmates at TSP and MTRC are not restricted to two ten-minute calls per week. Because the official policy statement issued by the prison administration sets forth the minimum number and duration of telephone calls permitted, inmates may be permitted to make more than two telephone calls per week exceeding ten minutes in length. Furthermore, the inmates in the instant case may make additional calls free of charge through the state telephones in the event of a legal or family emergency. Finally, defendants in the instant case have offered a legitimate justification for installation of

telephone service that must be provided. *See Nicholson v. Choctaw County*, 498 F.Supp. 295, 310, 315 (S.D.Ala.1980) (prison officials required to allow pretrial detainees to telephone attorneys between hours of 6:00 a.m. and 8:00 p.m.); *O'Bryan v. County of Saginaw*, 446 F.Supp. 436, 442 (E.D.Mich.1978), *remanded on other grounds*, 620 F.2d 303 (6th Cir.1980) (prison officials required to permit unlimited local calls for total period of ten minutes per week); *Mitchell v. Untreiner*, 421 F.Supp. 886, 902 (N.D. Ala.1976) (detainees must be allowed to make local calls daily during stated hours); *Jones v. Wittenberg*, 330 F.Supp. 707, 719 (N.D.Ohio 1971), *aff'd on other grounds*, 456 F.2d 854 (6th Cir.1972) (prison officials required to allow detainees to make local calls during stated hours; convicted prisoners need not be given same privilege); *Inmates of Suffolk County Jail v. Eisenstadt*, 360 F.Supp. 676, 690–91 (D.Mass. 1973), *aff'd on other grounds*, 494 F.2d 1196 (1st Cir.), *cert. denied*, 419 U.S. 977, 95 S.Ct. 239, 42 L.Ed.2d 189 (1974) (pay telephones must be installed to allow detainees at least one telephone call daily).

On the other hand, several courts have found that particular restrictions on inmate telephone use were reasonable in light of other means of access to the courts provided by the prison administration, or in light of the legitimate interests of prison officials in administration of the prison. *See Robbins v. South*, 595 F.Supp. 785, 789–90 (D.Mont.1984) (policy requiring in-

mates to obtain prior written authorization to telephone their attorney and limiting those calls to one per week found reasonable in light of inmates' ability to correspond with attorney through mail and during prison visit); *Pino v. Dalsheim*, 558 F.Supp. 673, 675 (S.D.N.Y.1983) (unlimited personal and mail communication with attorney constitutionally sufficient because state is not required to provide best manner of access); *Sellers v. Roper*, 554 F.Supp. 202, 208 (E.D.Va.1982) (detainee who did not allege that mail was inadequate or that he had a special need for access to telephone not denied meaningful access to courts). *See also Lock v. Jenkins*, 464 F.Supp. 541, 551 (N.D.Ind.1978), *aff'd in part and rev'd in part on other grounds*, 641 F.2d 488 (6th Cir.1981) (restricting detainee to one collect call per week to attorney and immediate family not unconstitutional in light of security concerns of prison officials); *Moore v. Janing*, 427 F.Supp. 567, 576–77 (D.Neb.1976) (three five-minute calls per week during stated hours not unreasonable in light of interest of prison officials in maintaining order, security and discipline); *Inmates of Milwaukee County Jail v. Petersen*, 353 F.Supp. 1157, 1165, 1169 (E.D.Wis.1973) (policy requiring detainees to obtain written authorization to call attorney or immediate family in emergency not unreasonable in light of mail communication, physical limitations of facility, and large numbers of inmates to be accommodated).

coinless telephones. Thus, the instant fact situation presents a less compelling need for intervention of the federal courts in daily prison administration than that involved in *Johnson*.

*Owens-El v. Robinson*, 457 F.Supp. 984 (W.D.Pa.1978), *modified on other grounds sub nom. Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754 (3d Cir.1979), was one of the first in a long line of decisions rendered by the District Court for the Western District of Pennsylvania involving conditions of confinement for pretrial detainees in the Allegheny County Jail. In an earlier decision, the court found that the telephone policy of the jail was to allow no calls, although it noted that some calls were allowed in a haphazard and arbitrary manner. *Owens-El v. Robinson*, 442 F.Supp. 1368, 1486 (W.D.Pa.1978). The court further found that defendants had offered no justification for strictly limiting or prohibiting inmates' telephone use. 442 F.Supp. at 1387. The court subsequently entered an order requiring that a reverse-charge telephone system be installed in the jail in appropriate numbers and at appropriate locations to insure reasonable access. 457 F.Supp. at 990. For calls to counsel and courts, the court required the jail administration to provide a reasonable alternative to use of the collect call system, such as processing such calls through the counseling office or installing some pay telephones. *Id.* In a later decision, the court found that the procedure used by the jail administration for processing calls through the counseling office resulted in arbitrary decisions by jail officials as to the type of telephone calls that would be authorized. *Inmates of Allegheny County Jail v. Wecht*, 565 F.Supp. 1278, 1284 (W.D.Pa. 1983).

The telephone system and policies challenged in the instant case, by contrast, provide for *at least* two calls per week on the coinless telephones which are located in appropriate numbers throughout both facilities. In addition, defendants offer a reasonable alternative for calls to courts and counsel by providing a procedure for inmate use of the state telephone system, which has not been shown to result in arbitrary decisions by prison officials as to the type of calls to be authorized.

In *Duran v. Elrod*, 542 F.Supp. 998, 1000 (7th Cir.1976), the court held that a class of pretrial detainees had sufficiently stated a due process claim by alleging that only four phones were available in the jail for inmate use, and that calls made on those telephones were monitored. *Miller v. Carson*, 401 F.Supp. 835 (M.D.Fla.1975), *aff'd and modified on other grounds*, 563 F.2d 741 (5th Cir.1977), involved a challenge by pretrial detainees to various conditions of their confinement, including restrictions on telephonic communication. Specifically, the court found that telephone calls were monitored by jail authorities and that telephone privileges had been denied to all inmates in a cellblock for the conduct of only one or two inmates housed in that cellblock. 401 F.Supp. at 885. In *Lathan v. Oswald*, 359 F.Supp. 85, 89 (S.D.N.Y. 1973), the court held that an inmate housed in administrative segregation had adequately stated a Sixth Amendment claim in alleging that his requests to call his attorney had been denied pursuant to prison policy which provided that segregated inmates were denied all telephone privileges except in emergency situations.

The limitations on telephonic communication addressed by the courts in these three cases are more restrictive than those involved here. As described earlier, the telephone system and policies in effect at TSP and MTRC do not provide for monitoring of inmate calls, and have not been shown to result in arbitrary denials of inmate telephone privileges by prison officials.

Finally, the Magistrate cited *Tuggle v. Barksdale*, 641 F.Supp. 34 (W.D.Tenn. 1985). In that opinion, Chief Judge McRae discussed the telephone system utilized at the Shelby County Jail and the jail officials' practice of monitoring calls in addressing an access-to-courts claim brought by inmates incarcerated in the jail. As described by Judge McRae, Shelby County jail officials had conducted negotiations with a telephone

company to utilize a coinless telephone system similar to that in effect at TSP and MTRC. *Id., slip op.* at 6. The court expressed dissatisfaction with the new system stating that its use would be "arbitrary, unduly harsh and primitive," and disapproved the jail officials' practice of monitoring inmate telephone calls. *Id. slip op.* at 6–7. The court went on to approve a portion of a plan submitted by defendants entitled "Present Free Telephone System" and disapproved the portion of the plan entitled "Proposed Secondary or Optional Collect Call System," except that collect long distance calls would be allowed only in case of emergencies. *Id., slip op.* at 7. Because the court did not discuss the substance of the plan submitted by the jail administration, it is unclear whether the portion of the plan disapproved by the court resembles the telephone system and policies at issue here. In any event, the Court does not find the reasoning of the court in *Tuggle* to be persuasive. First, the opinion does not address the alternative means of communication available for inmates nor the justification offered by the jail administration for considering use of the coinless telephone system. In addition, unlike *Tuggle,* the Court's decision in the instant case has been made on the basis of evidence regarding the coinless telephone system's actual use in a prison setting.

In sum, the Court concludes that the factual situations involved in the decisions cited by the Magistrate are distinguishable from that involved in the instant case. Accordingly, the Court rejects the conclusion reached in the Magistrate's Report and Recommendation that the current inmate telephone system and policies in effect at TSP and MTRC are unconstitutional. Therefore, the Court finds it unnecessary to consider the Magistrate's decision on other issues, including class certification and monetary damages.

## V. *Other Matters*

In submissions made subsequent to the date the Magistrate's Report and Recommendation was issued, plaintiff Shushan has requested a temporary transfer from Turney Center where he is now incarcerated to TSP because the law library at Turney Center was destroyed by fire. The Court will not consider Shushan's request at this time because it was not raised in plaintiff's original complaint and thus, was not considered by the Magistrate. Plaintiff Shushan may of course institute a separate action challenging the adequacy of the facilities at Turney Center if the problems have not yet been remedied. Accordingly, plaintiff Shushan's motion for relief is denied.

Plaintiffs have also requested that the Court appoint counsel to assist them in presenting their claims. The Court's resolution of the instant case, however, renders plaintiffs' motion moot. Accordingly, plaintiffs' motion for appointment of counsel is denied.